**LOUIS CHARLES SHAPIRO, P.A.**
By:    Louis Charles Shapiro, Esquire (New Jersey Bar I.D. No. 028201997)
1063 E. Landis Avenue
Vineland, New Jersey 08360
(856) 691-6800; Fax No. (856) 794-3326
Email: shap1@prodigy.net
Attorney for Plaintiff, Tanika Joyce

| | |
|---|---|
| TANIKA JOYCE,<br><br>                Plaintiff,<br><br>vs.<br><br>JOSEPH DIXON; CITY OF MILLVILLE; CHIEF JODY FARABELLA; JOHN/JANE DOE(S) I; JOHN/JANE DOE(S) II; JOHN/JANE DOE(S) III; and JOHN/JANE DOE(S) IV,<br><br>                Defendants. | UNITED STATES DISTRICT COURT<br>FOR THE DISTRICT OF NEW JERSEY<br>CAMDEN VICINAGE<br><br>CIVIL ACTION<br><br>Case No.:<br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff, Tanika Joyce, by way of Complaint against Defendants, Joseph Dixon, the City of Millville, Chief Jody Farabella, and John/Jane Doe(s) I, II, III, and IV, alleges as follows:

## FIRST COUNT
### Violation of 42 U.S.C. section 1983 and the Fourth and Fourteenth Amendments to the United States Constitution

### Cause of Action, Jurisdiction and Venue

1.  This action is brought pursuant to 42 U.S.C. section 1983, based upon violations of the Fourth and Fourteenth Amendments to the United States Constitution.

2.  Jurisdiction is conferred pursuant to 28 U.S.C. sections 1331 and 1343(a)(3). The Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. section 1367.

3.  Venue is proper in this District, pursuant to 28 U.S.C. section 1391(b)(2), as the events and/or omissions giving rise to this action occurred in the District of New Jersey.

### The Parties

4.  Plaintiff, Tanika Joyce ("Plaintiff" or "Joyce") was at all relevant times a citizen of the United States and of the State of New Jersey.

5.  Defendant, Joseph Dixon ("Dixon"), during the time periods set forth in this Complaint, was a duly appointed and employed police officer with the Millville Police Department, and as such was a person acting under color of law, statute, ordinance, regulation, custom, or usage of the City of Millville and of the State of New Jersey.

6.  As described elsewhere herein, Dixon is no longer employed by the Millville Police Department.

7.  Defendant, the City of Millville, is a municipal corporation located in Cumberland County, New Jersey.  Among other things, the City of Millville maintains and operates a police department which, at all relevant times, employed the named and unknown Defendants herein.

8.  Defendant, Chief of Police Jody Farabella ("Chief Farabella"), at all relevant times, was a duly appointed and employed police officer and Chief of Police of the Millville Police Department, was an officer in charge, a policymaker, and/or a supervisor, and as such was a person acting under color of law, statute, ordinance, regulation, custom, or usage of the City of Millville and of the State of New Jersey.

9.  Upon information and belief, there are additional persons, duly appointed employees of the Millville Police Department, the City of Millville, other law enforcement agencies and/or others, whose true names are unknown to Plaintiff, who are responsible and liable as law enforcement officers who participated and/or acquiesced in the unconstitutional and/or tortious

actions and/or omissions complained of herein which proximately caused Plaintiff's injuries and damages. These unnamed and unknown persons, at all relevant times, were acting under color of law, statute, ordinance, regulation, custom or usage of the City of Millville, the Millville Police Department, of the State of New Jersey, and/or other law enforcement agencies, and are referred to as John/Jane Doe(s) I.

10. Upon information and belief, there are additional persons, duly appointed employees of the Millville Police Department, the City of Millville, other law enforcement agencies and/or others, whose true names are unknown to Plaintiff, who are responsible and liable as officers in charge, policymakers, and/or supervisors, and who participated and/or acquiesced in the unconstitutional and/or tortious actions and/or omissions complained of herein which proximately caused Plaintiff's injuries and damages. These unnamed and unknown persons, at all relevant times, were acting under color of law, statute, ordinance, regulation, custom or usage of the City of Millville, the Millville Police Department, of the State of New Jersey, and/or other law enforcement agencies, and are referred to as John/Jane Doe(s) II.

11. Upon information and belief, there are other individuals, whose true names are unknown to Plaintiff, who are responsible and liable and who participated and/or acquiesced in the unconstitutional and/or tortious actions and/or omissions complained of herein which caused Plaintiff's injuries and damages. These unnamed and unknown persons, at all relevant times, were acting under color of law, statute, ordinance, regulation, custom or usage of the City of Millville, the Millville Police Department, of the State of New Jersey, and/or other law enforcement agencies, and are referred to as John/Jane Doe(s) III.

12. Upon information and belief, there are other entities, the identities of which are unknown to Plaintiff, which are responsible and liable for, and which participated and/or

acquiesced in, the unconstitutional and/or tortious actions and/or omissions complained of herein which caused Plaintiff's injuries and damages. Such entities are referred to herein as John/Jane Doe(s) IV.

13. John/Jane Doe(s) I, II, III, and IV are referred to in this Complaint regardless as to actual gender.

14. Each individual Defendant named herein is sued in his and/or her individual capacity.

15. To the extent the full and/or true name of any Defendant is discovered, Plaintiff reserves the right to seek amendment to the caption and body of this Complaint.

16. Plaintiff further reserves the right to amend this Complaint to add details surrounding the assault described herein, as well as additional parties and claims, as may be revealed in discovery and investigation.

**Factual Allegations**

17. On March 24, 2018, Defendant Dixon responded to a Shop Rite store, located at 2130 North Second Street in Millville, Cumberland County, New Jersey, in response to an alleged shoplifting complaint.

18. Upon information and belief, upon Dixon's arrival at the Shop Rite in Millville, there was a juvenile in custody for allegedly opening food items inside the store and eating the items without paying.

19. Upon information and belief, the juvenile's mother, Plaintiff Joyce, allegedly refused to provide identification to another Millville officer.

20.   The second Millville officer, upon further information and belief, did not wish to charge the juvenile, but claimed that he needed Joyce's identification in order to release the juvenile to her.

21.   Upon information and belief, Plaintiff Joyce allegedly refused to provide identification to the other Millville officer.

22.   Upon information and belief, Joyce allegedly began arguing with Dixon and the other officer, and Dixon advised her that she would be arrested for disorderly conduct.

23.   Dixon attempted to place Joyce under arrest.

24.   In the course of this arrest, Dixon employed excessive force by throwing Joyce to the ground, and by spraying her with oleoresin capsicum spray.

25.   Plaintiff Joyce complained that she could not breathe, and that her hip was injured.

26.   After this incident, Plaintiff Joyce received treatment at Inspira Hospital in Vineland, New Jersey.

27.   On September 5, 2019, the New Jersey Division of Criminal Justice, Office of Public Integrity and Accountability ("OPIA"), sent a letter to Dixon, notifying him that he was a target of a State Grand Jury investigation into allegations of official misconduct, assault, and falsifying or tampering with public records relating to his conduct in the course of his employment as a Millville Police Officer.

28.   On November 20, 2019, Dixon entered guilty pleas on a pre-indictment Accusation in Superior Court, Cumberland County, to two counts of third-degree aggravated assault based on the conduct committed against Joyce on March 24, 2018 and against Audra Capps on February 25, 2018.

29.  Capps, along with her husband, have a separate lawsuit pending in this Court captioned as <u>Audra Capps and Douglas Robert Gibson, Jr. v. Joseph Dixon, Bryan Orndorf, Jody Farabella, City of Millville, et al.</u>, Civil Action No. 1:19-cv-12002-RMB-AMD (D.N.J.).

30.  At his plea hearing on November 20, 2019, Dixon admitted under oath, among other things, that he used excessive force against Joyce and Capps, and that his actions were reckless.

31.  As part of his guilty pleas, Dixon was required to agree to a lifetime ban on public employment, and he will never be able to serve as a police officer in the State of New Jersey in the future.

32.  Dixon's pleas of guilty for his assaultive conduct as to Joyce and Capps came with a recommended and negotiated sentence of probation, conditioned upon serving 364 days in the Cumberland County Jail.

33.  At sentencing on January 17, 2020, the Superior Court enforced the negotiated plea agreement entered by Dixon and the OPIA, placed Dixon on two years of probation, but suspended Dixon's county jail sentence.

34.  In this action, Plaintiff Joyce does not challenge whether there was probable cause for her arrest.

35.  However, and in addition to his violations of federal and state constitutional protections against unreasonable searches and seizures described herein, Defendant Dixon violated state and local guidelines governing the use of force by police officers.

36.  The New Jersey Attorney General's Use of Force Policy (revised June 2000) (the "AG UFP") provides that, among other things:

> ... In situations where law enforcement officers are justified in using force, **the utmost restraint should be exercised. The use of force should never be considered routine.** In determining to use force, the law enforcement officer shall be guided by the principle that **the degree of force employed in any**

> **situation should be only that reasonably necessary**. Law enforcement officers should exhaust all other reasonable means before resorting to the use of force. It is the policy of the State of New Jersey that law enforcement officers will use only that force which is objectively reasonable and necessary.

AG UFP at 1, par. 3 (bold added).  The AG UFP also provides:

> Deciding whether to utilize force when authorized in the conduct of official responsibilities is among the most critical decisions made by law enforcement officers. **It is a decision which can be irrevocable.** It is a decision which must be made quickly and under difficult, often unpredictable and unique circumstances. Sound judgment and the appropriate exercise of discretion will always be the foundation of police officer decision making in the broad range of possible use of force situations. It is not possible to entirely replace judgment and discretion with detailed policy provisions.

AG UFP at 2, par. 1 (bold added).

37.  The AG UFP policy also imposes a duty upon other officers with respect to the use of excessive force.  The policy:

> ... reinforces the responsibility of law enforcement officers to take those steps possible to prevent or stop the illegal or inappropriate use of force by other officers. Every law enforcement officer is expected and required to take appropriate action in any situation where that officer is clearly convinced that another officer is using force in violation of state law. Law enforcement officers are obligated to report all situations in which force is used illegally by anyone. This policy sends a clear message to law enforcement officers that they share an obligation beyond the requirements of the law.

AG UFP at 1-2, par. 4.

38.  Plaintiff Joyce reserves the right to further demonstrate that other officers of the Millville Police Department failed to abide by their responsibilities to intervene to prevent and to report the excessive force used by Defendant Dixon on March 24, 2018 under the AG UFP and under the Millville Police Department's own Rules and Regulations.

39.  Joyce reserves the right to assert other violations of state and local guidelines and directives, as may be revealed in discovery and investigation.

40. Joyce further reserves the right to move to consolidate this action with the Capps litigation pursuant to Federal Rule of Civil Procedure 42(a).

41. Separate and apart from, and/or as a result of the violations of, the AG UFP, Millville Police Department Directives, and any police academy training he received, Defendant Dixon used excessive force against Plaintiff in effecting her arrest, resulting in a violation of her rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free from unreasonable searches and seizures.

42. In fact, Defendant Dixon pleaded guilty to assaulting Joyce and to using excessive force against her.

WHEREFORE, Plaintiff Tanika Joyce respectfully requests that this Honorable Court enter judgment in her favor and against Defendants Joseph Dixon and John/Jane Doe(s) I and III, individually, jointly and severally, in an amount that would reasonably and properly compensate her in accordance with the law, together with punitive damages, prejudgment interest, costs of suit, reasonable attorney's fees pursuant to 42 U.S.C. section 1988, and such other relief as the Court deems just.

## SECOND COUNT
### *Monell* Claim in Violation of 42 U.S.C. sec. 1983

43. Plaintiff incorporates the preceding paragraphs of this Complaint as if set forth at length herein.

44. This cause of action is brought pursuant to 42 U.S.C. §1983, the Fourth and Fourteenth Amendments to the Constitution of the United States of America, and in accordance with Monell v. Department of Soc. Serv. of the City of New York, 436 U.S. 658 (1978).

45. In or about 2017 and 2018, the Newark *Star Ledger* and/or NJ Advance Media for NJ.com (collectively, "NJ.com") began to compile data based on New Jersey police use of force

reports received through public records requests. Its 16-month-long investigation led to a series of articles originally published in November and December of 2018, which were collectively referred to as The Force Report.

46. As part of its investigation, and based on the records obtained and analyzed, NJ.com determined that during his first three-plus years as a police officer for the City of Millville, Defendant Dixon reported using force more than any other police officer in the State of New Jersey.

47. NJ.com also reported that, over the studied five-year period of 2012 through 2016, Dixon's 58 instances in which he reported using force ranked him third statewide behind two other officers from different police departments who had 62 and 59 such instances of reported use of force, respectively.

48. NJ.com reported that Defendant Dixon's 58 use of force incidents in his first four years after completing police academy training yielded an average of more than one incident per month.

49. By contrast, NJ.com reported that the more than 17,000 New Jersey officers who reported using force over a similar period averaged less than one incident per year.

50. According to NJ.com's reporting and investigation, Dixon himself accounted for a full one-tenth of the entire Millville Police Department's use of force incidents reported, and none of the other 70-plus officers came close to his share.

51. Moreover, as related by NJ.com's reporting and investigation, with 58 reported instances of the use force during the period studied, Dixon far eclipsed the second-place finisher in the Millville Police Department, Officer Jeffrey Proffit, who reported using force 36 times during the same period.

52. According to NJ.com's reporting and investigation, Defendant Dixon reported more injured subjects than all but one other officer in the state, despite the fact that he was on the police force for only four of the five years covered by The Force Report.

53. In response to NJ.com's reporting and investigation, Defendant Millville Police Chief Jody Farabella  nevertheless called Defendant Dixon "an example of a fine officer" who was never the subject of a sustained excessive force complaint.

54. Defendant Chief Farabella, however, and according to NJ.com, declined to say how many excessive force complaints in total had been filed against Dixon.

55. Defendant Chief Farabella commented further to NJ.com by referring to Dixon's duty assignment: "He's in the worst areas ... so he's gonna see more than a regular patrolman."

56. Upon information and belief, the incident involving Plaintiff Joyce occurred at a Shop Rite store.

57. NJ.com also has reported on irregularities with some of Dixon's use of force reports. Upon further information and belief, and as reported by NJ.com, Dixon over the past few years had posted thoughts and memes to his public Facebook account to defend how officers have used force, and to disparage critics of police tactics.  NJ.com further reported that Dixon's account's privacy settings were changed about three weeks after NJ.com reached out to him about his posts, and they are no longer visible.

58. In addition, NJ.com has reported that, of the 39 excessive force complaints filed against police officers in the City of Millville from 2012 through 2016, not one complaint was sustained.

59. Furthermore, Defendant Chief Farabella, according to NJ.com, even nominated Dixon for a Public Safety Officer Medal of Valor.

60. If Dixon had won the award, he would have had a chance to meet the President of the United States, upon information and belief.

61. In addition, NJ.com has reported in The Force Report that from 2012 through 2016, Millville's Police Department recorded 665 total uses of force, for 46.7 incidents per 1,000 arrests, and concluded that the City of Millville's Police Department used force at a higher rate than 394 other police departments in the State of New Jersey.

62. NJ.com's analysis additionally revealed that 74 officers in the Millville Police Department used force over five years, an average of 9.0 incidents per officer who used force over that five-year period, which exceeded the statewide average of 4.1 incidents per officer.

63. Defendant Chief Farabella's statement that Dixon was not previously the subject of a sustained excessive force complaint suggests that neither Defendant City of Millville, nor Defendant Chief Farabella, nor any of the John Doe Defendants, have imposed discipline on Dixon for previous instances of excessive force.

64. These facts are evidence of deliberate indifference on the part of Chief Farabella and by the City of Millville and its policymakers to the pattern and use of excessive force by Dixon, to the frequent use of excessive force by officers of the Millville Police Department, and to the questionable process employed by the Millville Police Department of investigating internal affairs complaints and as to officer discipline, among other things which may be revealed in discovery and investigation.

65. Defendant, City of Millville, Chief Farabella and/or its policymakers, including John/Jane Doe(s) II, upon information and belief, allowed Defendant Dixon's behavior to go unchecked, and this is reflected in the fact that Dixon is the subject of two other known excessive force lawsuits now pending in the District of New Jersey, the aforementioned case of Audra

Capps and Douglas Robert Gibson, Jr. v. Joseph Dixon, Bryan Orndorf, Jody Farabella, City of Millville, et al., Civil Action No. 1:19-cv-12002-RMB-AMD (D.N.J.) and the case of Barry Cottman v. Jody Farabella, Millville Chief of Police Jody Farabella, P.O. Joseph Dixon 172, P.O. Robert Runkle 160, and the City of Millville, Civil Action No. 1:19-cv-14122-NLH-AMD (D.N.J.).

66.    Defendant, City of Millville, Chief Farabella and/or its policymakers, including John/Jane Doe(s) II, upon information and belief, also permitted the conduct of Millville Police Officer Jeffrey Proffit to go unchecked. Ultimately, however, on January 10, 2020, Proffit pleaded guilty in the Superior Court of New Jersey, Cumberland County, to a similar third-degree aggravated assault charge in connection with a police-citizen encounter.

67.    Proffit, who is also required to resign from the Millville Police Department, likewise agreed to a lifetime ban on public employment. He is pending sentencing at this time.

68.    Separate and apart from the use of force statistics identified by NJ.com in The Force Report, the City of Millville's Police Department has now had two police officers become convicted felons for committing aggravated assaults upon arrestees within the span of the past two months.

69.    Neither the City of Millville, nor Defendant Chief Farabella or its Police Department and/or its policymakers, have learned from previous litigation and settlement payments made, and have failed to change: (1) a culture which tolerates the use of excessive force by its officers; (2) a culture in which outcome-determined internal affairs investigations are conducted; (3) a culture which fails to properly train police officers; and/or (4) a culture which improperly supervises, hires, and/or retains officers in employment who demonstrate propensities toward the use of excessive force.

70. On or about December 4, 2019, New Jersey's Attorney General announced sweeping statewide reforms regarding, among other things, the use of force by police officers, the conduct of internal affairs investigations, and the identification of at-risk police officers, known collectively as the "Excellence in Policing Initiative."

71. In a particularly noteworthy letter dated December 4, 2019, the Attorney General notified Defendant Chief Farabella and five other New Jersey Chiefs of Police that, among other things, he was "…writing to recognize your police departments as the six New Jersey law enforcement agencies that will participate" in a pilot program for the State of New Jersey's new Police Use-of-Force Portal for obtaining statewide use-of-force data.

72. Defendants, the City of Millville and its policymakers, including but not limited to Chief Farabella and John Doe(s) II and IV, had a policy or custom of failing to adequately train their officers and employees with respect to the prevention of unconstitutional and unreasonable searches and seizures and/or the use of excessive force, and were deliberately indifferent to the deficiency in training in the above regard and to the rights of persons with whom the police came in contact, which deficiencies in training proximately caused the injuries and damages complained of herein by Plaintiff Joyce.

73. Defendants, the City of Millville and its policymakers, including but not limited to Chief Farabella and John Doe(s) II and IV, had a policy and/or custom that tolerated the use of unconstitutional and unreasonable searches and seizures and/or the use of excessive force, which proximately caused the constitutional and personal injuries complained of herein by Plaintiff Joyce.

74. Defendants, the City of Millville and its policymakers, including but not limited to Chief Farabella and John Doe(s) II and IV, and through their agents and employees, promulgated

customs, policies, practices, ordinances, regulations and directives that caused and/or tolerated the use of excessive force against Plaintiff Joyce and others.

75.  Defendants, the City of Millville and its policymakers, including but not limited to Chief Farabella and John Doe(s) II and IV, have been deliberately indifferent to the violent propensities of their  police officers and/or of the violent propensities of the individually named Defendant police officer herein.

76.  Defendants, the City of Millville and its policymakers, including but not limited to Chief Farabella and John Doe(s) II and IV, through the City's police department, established, knew of, and acquiesced in policies, procedures, and customs they knew or should have known would lead to violations of individuals' constitutional rights.

77.  Defendants, the City of Millville and its policymakers, including but not limited to, Chief Farabella and John Doe(s) II and IV, through the City's police department, acted with deliberate indifference to the consequences by failing to develop appropriate policies and/or by failing to enforce the policies, procedures and directives described herein and/or which were already in place.

78.  Defendants' training programs with regard to the use of force were inadequate, upon information and belief, including but not limited to the failure to train their officers with respect to the prevention of unconstitutional and unreasonable searches and seizures and/or the prevention of the use of excessive force.

79.  Upon information and belief, Defendants, the City of Millville and its policymakers, including but not limited to Chief Farabella and John Doe(s) II and IV, also should have known about and learned from previous litigation filed against them and/or against their police officers

alleging the use of excessive force and information about previous unconstitutional conduct engaged in by one or more Millville police officers.

80. Defendants, the City of Millville and its policymakers, including but not limited to Chief Farabella and John Doe(s) II and IV, were deliberately indifferent to these deficiencies, and the deficiencies in training, oversight, investigation, enforcement, and discipline caused the actions of the individual Defendant set forth herein, which proximately caused the injuries and damages complained of herein by Plaintiff Joyce.

81. Defendants, the City of Millville and its policymakers, including but not limited to Chief Farabella and John Doe(s) II and IV, upon information and belief, knew and/or were aware of and/or should have known of the deficiencies set forth in this Count, and knew and/or were aware of and/or should have known about alternatives for preventing the constitutional violations complained of herein, and/or acquiesced in a policy or custom of inaction or toleration in the above regard.

82. Defendants, the City of Millville and its policymakers, including but not limited to Chief Farabella and John Doe(s) II and IV, upon information and belief, additionally engaged in a custom or usage of not abiding by mandated internal affairs policies in connection with investigating officer misconduct, and were deliberately indifferent to the custom or usage of conducting deficient internal affairs investigations with a preordained goal of exonerating the officer(s) accused of excessive force, including but not limited to Defendant Dixon.

83. Said customs or usages, and Defendants' deliberate indifference thereto, resulted in deficient, biased investigations leading to findings exonerating Defendant Dixon, who was involved in assaulting Plaintiff Joyce and others, which had the result of keeping such an officer on patrol, on the street, and in a position to harm Plaintiff and others.

15

84. Defendants' customs or usages with regard to the investigation of complaints made against Millville police officers resulted in a sham process which permitted the police department's officers to violate the constitutional rights of individuals with impunity with the knowledge that they would not be punished for their misconduct and would be retained in their employment.

85. Defendants, the City of Millville and its policymakers, including but not limited to Chief Farabella and John Doe(s) II and IV, directly and proximately caused Plaintiff Joyce to be subjected to an unreasonable search and/or seizure and/or to the use of excessive force, thereby violating her rights under the Fourth and Fourteenth Amendments to the United States Constitution.

86. Defendants jointly, severally and in the alternative, deprived Plaintiff Joyce of her federal constitutional rights, as set forth herein, and deprived her of said rights while acting under color of state law, in violation of 42 U.S.C. §1983.

87. As a proximate cause of the actions and omissions described herein, Plaintiff Joyce suffered emotional and physical pain, as well as other damages and injuries.

WHEREFORE, Plaintiff Tanika Joyce respectfully requests that this Honorable Court enter judgment in her favor and against Defendants, the City of Millville, Chief Jody Farabella, and John Doe(s) II and IV, jointly and severally, in an amount that would reasonably and properly compensate her in accordance with the law, together with prejudgment interest, costs of suit, reasonable attorney's fees pursuant to 42 U.S.C. section 1988, and such other relief as the Court deems just.

## THIRD COUNT
## Violation of Article I, Paragraph 7 of the New Jersey Constitution

88. Plaintiff incorporates the preceding paragraphs of this Complaint as if set forth at length herein.

89. Plaintiff Joyce brings this Count pursuant to the New Jersey Civil Rights Act, N.J.S.A. 10:6-2 ( c), (e), and (f).

90. As described herein, Defendant Dixon and/or John/Jane Doe(s) I and III violated Plaintiff Joyce's right under Article I, Paragraph 7 of the New Jersey Constitution to be free from unreasonable searches and seizures.

WHEREFORE, Plaintiff Tanika Joyce respectfully requests that this Honorable Court enter judgment in her favor and against Defendants, Joseph Dixon and/or John/Jane Doe(s) I and III, individually, jointly and severally, in an amount that would reasonably and properly compensate her in accordance with the law, together with punitive damages, prejudgment interest, reasonable attorney's fees, costs of suit, and such other relief as the Court deems just.

## FOURTH COUNT
## Supervisory Liability Under 42 U.S.C. sec. 1983

91. Plaintiff incorporates the preceding paragraphs of this Complaint as if set forth at length herein.

92. As may be applicable and appropriate to Counts I, II, and/or III above, and based on the facts recited therein, Defendants, Chief Farabella and/or John/Jane Doe(s) II, are liable as supervisors under 42 U.S.C. sec. 1983 for the unconstitutional acts of their subordinates. See A.M. v. Luzerne Cty. Juvenile Detention Ctr., 372 F.3d 572, 585-586 (3d Cir. 2004) (citations omitted); Barkes v. First Correctional Medical, Inc., 766 F.3d 307, 317-320 (3d Cir. 2014), rev'd

on other grounds, Taylor v. Barkes, 135 S.Ct. 2042 (2015), as cited in Raheem Jacobs v. Cumberland Cty., et al., Civil Action No. 1:16-cv-01523-JHR-AMD (D.N.J.).

93.    Defendants, Chief Farabella and/or John/Jane Doe(s) II, in their roles as policymakers of the Defendant, City of Millville, and with deliberate indifference to the consequences, established and maintained policies, practices or customs identified elsewhere herein, and as may be further revealed in discovery and investigation, which directly caused the constitutional harm which resulted to Plaintiff Joyce and which resulted to other known Plaintiffs who have cases against Defendants.

94.    Defendants, Chief Farabella and/or John/Jane Doe(s) II, failed to employ those practices and policies identified in Count II, and such practices and policies which further may be revealed in discovery and investigation.

95.    Such policies or procedures in effect at the time of the injuries alleged herein created an unreasonable risk of a constitutional violation.

96.    Defendants, Chief Farabella and/or John/Jane Doe(s) II, were aware that the policies or practices created an unreasonable risk of a constitutional violation.

97.    Defendants, Chief Farabella and/or John/Jane Doe(s) II, were indifferent to the risk.

98.    The constitutional injury alleged herein and as alleged in other litigation was caused by these Defendants' failure to implement supervisory practices or procedures.

99.    In the alternative, Defendants, Chief Farabella and/or John/Jane Doe(s) II, may be held personally liable under 42 U.S.C. sec. 1983, as persons in charge, by acquiescing in their subordinates' violations, and in such other ways as may be revealed in discovery and investigation.

100.  As evidence of this acquiescence, and by way of example, Defendant Chief Farabella, instead of simply declining to comment in the face of NJ.com's reporting, went out of his way to defend Dixon by calling him "an example of a fine officer," and by making other reported comments to excuse or justify Dixon's conduct.

101. In addition to the pleaded facts set forth in Counts I and II of this Complaint, which are hereby incorporated by reference, and as additionally may be revealed in discovery and investigation, Defendants, Chief Farabella and/or John/Jane Doe(s) II, upon information and belief, implemented and/or allowed improper policies or procedures to exist and/or acquiesced in the violations of their subordinates, in that they:

(1)    knew or should have known about the frequency of their own departmental use of force reports which were filled out by their officers, including but not limited to Defendant Dixon;

(2)    knew or should have known that their training programs were ineffective in stemming the tide of unconstitutional uses of excessive force by their officers;

(3)    knew or should have known that state and departmental guidelines regarding the use of force were not being adhered to;

(4)    knew or should have known that appropriate procedures regarding the conduct of internal affairs investigations and officer discipline for the use of excessive force were not being followed and/or misused to create biased outcomes, with the ultimate result that dangerous officers were being permitted to remain employed, undisciplined and unpunished, to the detriment of the public and Plaintiffs in this case and in other cases;

(5)     knew or should have known that the high frequency of certain officers' (including but not limited to Dixon) use of force reports was evidence of a larger problem which was not being addressed and/or which was being overlooked in an effort to support the officers of the Millville Police Department; and/or

(6)     knew or should have known, based on previous instances of Dixon's use of force, and at least as early as the June 27, 2017 incident in the Cottman case and the February 25, 2018 incident in the Capps case, that Dixon exhibited the propensity to use excessive force, such that he should not have been permitted to remain on duty prior to the March 24, 2018 incident involving Plaintiff Joyce.

WHEREFORE, Plaintiff Tanika Joyce respectfully requests that this Honorable Court enter judgment in her favor and against Defendants, Chief Jody Farabella and/or John/Jane Doe(s) II, individually, jointly and severally, in an amount that would reasonably and properly compensate her in accordance with the law, together with punitive damages as may be permitted by law, prejudgment interest, reasonable attorney's fees pursuant to 42 U.S.C. section 1988, costs of suit, and such other relief as the Court deems just.

### DEMAND FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands a trial by jury on the causes of action pleaded in this Complaint.

## NOTICE OF DESIGNATION OF TRIAL COUNSEL

Louis Charles Shapiro, Esquire, of the law firm of Louis Charles Shapiro, P.A., is hereby designated as trial counsel on behalf of Plaintiff, Tanika Joyce.

Respectfully submitted,

**LOUIS CHARLES SHAPIRO, P.A.**

By: _____
Louis Charles Shapiro, Esquire

Attorney for Plaintiff, Tanika Joyce

DATED: January 31, 2020