# Louis Charles Shapiro, P.A.

1063 East Landis Avenue

Vineland, New Jersey 08360

Telephone (856) 691-6800; Facsimile (856) 794-3326

**LOUIS CHARLES SHAPIRO**
CERTIFIED CRIMINAL TRIAL ATTORNEY
LL.M. IN TRIAL ADVOCACY
MEMBER OF NJ AND PA BARS

**SAMUEL L. SHAPIRO**
ATTORNEY AT LAW
COUNSELOR AT LAW
1940 (ADMITTED TO NJ BAR) - 1996

Email: shap1@prodigy.net
Website: www.louischarlesshapiro.com

October 14, 2021

## LETTER BRIEF[1]

**BY ELECTRONIC FILING (ECF)**
Hon. Ann Marie Donio, U.S.M.J.
United States District Court for the District of New Jersey
Mitchell H. Cohen U.S. Courthouse, Room 2010
1 John F. Gerry Plaza, 4th & Cooper Streets
Camden, New Jersey 08101

Re:   Audra Capps, et al. v. Joseph Dixon, et al.
      Case No.: 1:19-cv-12002-RMB-AMD

      Tanika Joyce, et al v. Joseph Dixon, et al.
      Case No.: 1:20-cv-01118- RMB-AMD

Dear Judge Donio:

### I.   FACTUAL BACKGROUND

"... [T]he responding Defendant [sic] are <u>unable to locate Dixon's initial Fitness for Duty Examination from 2012</u>; however, the 8/6/18 examination reveals that Dixon did undergo a Fitness for Duty Examination on 8/22/12 and there ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[1] The version of this Letter Brief to be filed on the docket will contain redactions due to the subject matter of this motion. A full version without redactions will be sent to Chambers.

1

████████████ ██ ███ ████████████ . . ." See 3/19/20 Millville Responses to Document Requests, at 12, Resp. No. 19 (bracketed material and emphasis added), at Exhibit "A." Defendants' certified response is that they are "unable to locate" this rather important document. The disappearance of Dixon's 2012 initial fitness for duty examination necessarily colors any analysis of Defendants' production of the officers' remaining examination reports in heavily redacted format.

In Plaintiffs' July 28, 2021 discovery deficiency letter, Plaintiffs placed Defendants on notice that this was an issue. See 7/28/21 Discovery Deficiency Letter, at 7, 15, 16, Exhibit "B." More specifically, Plaintiffs let Defendants know that a section of Defendant Dixon's 2018 fitness for duty report was mostly redacted, but contained ███ ████████ ████████ ██ █ ████████████ ██████ ████████████ ████ █████████ ████████ █████████ █████████." Id. at 16. Plaintiffs also informed Defendants in the July 28, 2021 letter that Defendant Orndorf, as part of the pre-employment process, ████████ ██ ████████████ ████ ██ ████ ███ █████ so that the Millville Police Department ██████ ██ █████████ ████ ██████████ █████████ █████ ███ ████████████ ████████ ████████ ██████, id. at 15, which suggests that ████████ ███ ████████ ████ ██ ██████ ██████ ████████ ████ ██ ████████ ██ ████████ █ ██████ ██████. A copy of that ████████████ ████████ ████████ ██████ █████, as produced by Defendants as Millville/000288, is attached as Exhibit "C."

The missing ████████████ ████████ ████████ ██████ ██████ are further relevant because, in Defendants' as-yet uncertified September 8, 2021 supplemental discovery responses, provided in response to Plaintiffs' July 28, 2021 deficiency letter, Defendants write, in pertinent part, as follows:

REDACTED

2

REDACTED

See Defs.' 9/8/21 Uncertified Supp. Responses, at 20, Exhibit "D" (emphasis added). When viewing Orndorf's ~~[redacted]~~ in the context of the above uncertified answer, different possibilities are raised: (1) Defendants were not aware because they did not get the ~~[redacted]~~ even though such ~~[redacted]~~ would be pertinent to a ~~[redacted]~~ of a man being given a badge and a gun; or (2) the Millville Police Department, as part of Orndorf's hiring process, actually did receive the ~~[redacted]~~ but simply have not produced them. This second scenario would render the above-asserted lack of knowledge to be incorrect.

And as for that missing Dixon 2012 initial fitness for duty examination, the Court likewise should be troubled when it considers that, in Defendants' September 8, 2021 uncertified supplemental discovery responses, Defendants stated, among other things: "... As for the initial Fitness for Duty examination of Dixon, Millville has no explanation as to why it is missing" Id., Exhibit "D," at 25 (emphasis added). Moreover, Defendants say in their as-yet uncertified supplemental September 8, 2021 discovery responses, "Attempts were made around April 8, 2020, to obtain a copy of the report from ~~[redacted]~~; however, it was learned that ~~[redacted]~~ office has closed." Id. If that last part is true, then that means Plaintiffs might not have found out about the closure of ~~[redacted]~~ office, or about Defendants' efforts in April of 2020 to obtain the initial Dixon fitness for duty report, had Plaintiffs not sent Defendants a deficiency letter in July of this year.

3

Following Plaintiffs' September 15, 2021 letter response (a copy of which the Court may already possess) and the resolution by agreement of some discovery issues, the Court conducted a telephone conference on September 29, 2021. The Court ruled, among other things, that Plaintiffs would be granted leave to file a discovery motion regarding the officers' fitness for duty examinations. A copy of the Court's September 29, 2021 Order is attached as Exhibit "E."

Following the issuance of the September 29, 2021 Order, Defendants, in an October 1, 2021 letter, a copy of which is attached as Exhibit "F," now raised the issue that certain portions of the Dixon 2018 fitness for duty report were left unredacted in error, but another portion which was originally redacted should not have been. See Exhibit "F," 10/1/21 letter at 2. Moreover, as Defendants pointed out in their October 1, 2021 letter, the stated date on which ▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓ of Dixon took place, March 10, 2018, was also an error. Id. Compare the newly redacted Dixon August 6, 2018 report, attached within Exhibit "F," with the original, attached as Exhibit "G," and which is marked as Millville/001053-1064. A copy of the August 29, 2015 Orndorf fitness for duty report, Millville/001065-1078, is attached as Exhibit "H." The confluence of these multiple errors, the missing pre-employment ▓▓▓▓▓▓▓▓ ▓▓▓▓▓ for one officer, and the lack of an explanation for the absence of another officer's fitness report altogether, give Plaintiffs understandable concern when faced with heavily redacted reports produced by the opposing parties.

However, ▓▓▓▓▓▓▓▓ redacted reports on the officers share a common theme, which shapes the legal analysis: The reports on their face demonstrate ▓▓▓▓▓▓▓ ▓▓▓▓ ▓▓▓ ▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓. ▓▓▓▓▓▓▓▓ August 6, 2018 report on Dixon reads in relevant part as follows:

REDACTED

4

REDACTED

See Exhibit "F," at Millville/001053 (emphasis added).  One fundamental problem is that Plaintiffs at this point cannot read ~~[redacted]~~."  In light of that missing August 2012 report for Dixon, for which Defendants said they were "unable to locate" and had "no explanation" for why it is missing, Plaintiffs reserve the right to request a spoilation instruction at trial and to seek whatever other additional relief may be available from the Court for the absence of that critical document. That aside, what is clear from this report is that it was conducted ~~[redacted]~~ – the ~~[redacted]~~ being Chief Farabella.  What could not be more clear, moreover, is that Dixon was advised,

REDACTED

REDACTED

See Exhibit "H," Millville/001065 (emphasis added). Because the bulk of the report is redacted, what is not known is whether ▓▓▓▓▓▓ received and considered Orndorf's ▓▓▓▓ from the ▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓ ▓▓▓▓▓▓ ▓▓▓▓, and what impact, if any, such ▓▓▓▓ had on his evaluation.

REDACTED

## II.  LEGAL ARGUMENT

The federal rules have established a liberal system of discovery "meant to insure that no relevant fact remain[s] hidden." Crawford v. Dominic, 469 F. Supp. 260, 262 (E.D.Pa. 1979) (Pollak, J.). Nevertheless, as stated in their October 1, 2021 letter, Defendants attempt to invoke the psychotherapy privilege recognized by Jaffee v. Redmond, 518 U.S. 1 (1996) to bar production of the officers' unredacted fitness for duty reports. However, as recognized in Revelle v. Darby Borough Police Officer Trigg, Civil Action No. 95-5885 (E.D.Pa. Feb. 2, 1999), a copy of which is attached as "I," this privilege is not absolute because it does not cover all communications with

6

psychiatrists, psychologists, and social workers and, as with other testimonial privileges, it can be waived. Id., slip op. at 5 (citing Jaffee, 518 U.S. at 15 n.14).

Defendants' refusal to produce these reports is not correct when one considers Siegfried v. City of Easton, 146 F.R.D. 98, 101 (E.D. Pa.1992). In that case, a plaintiff who was allegedly assaulted by a police officer sought to compel production of the police officer's pre-employment psychological testing, arguing that the material was relevant to his § 1983 claims against the City. Defendants opposed plaintiff's motion, asserting, among other things, the federal psychotherapist-patient privilege. The district court granted plaintiff's motion. Id. at 102. In determining first the inapplicability of the privilege and then, alternatively, that the privilege could be breached, the court ruled:

> In the instant action, the information sought by plaintiffs is highly relevant and may provide compelling evidence concerning the city's knowledge of defendant Schlegel's propensity toward violence. Thus, there is a significant evidentiary need for the production of this evidence . . . .

Id. at 100-101. The district court also rejected defendants' executive privilege argument, granted plaintiff's motion, and ordered pre-employment psychological reports to be produced for *in camera* inspection. Id. at 101-102. See also Bayer v. Township of Union, 414 N.J. Super. 238, 997 A.2d 1118, 1137-38 (App. Div. 2010) (In a section 1983 case, the defendant officers' psychological reports were produced to the court for *in camera* review before it was determined that there was nothing discoverable to provide to the plaintiff). Plaintiffs, for all the reasons outlined herein, cannot have a level of comfort that there is simply nothing to see here.

Furthermore, as the Revelle court pointed out, the focus in Jaffee was on protecting the sanctity of the treatment relationship. Id. Thus, "[a]n evaluation that was prepared for the purpose

7

of employment with the expectation that this evaluation would be delivered to the employer is not confidential communication between the therapist and the patient and is, therefore, not protected by the psychotherapist-patient privilege." Id. (citing Siegfried, supra, 146 F.R.D. at 101). As such, the district court in Revelle, which involved a section 1983 case for the use of excessive force during an arrest, ordered the disclosure of evaluations made for employment, rather than for counseling or treatment purposes, for *in camera* review. Id. at 1, 5. See also Laffey v. King, No. 10-cv-1177 (M.D.Pa. Apr. 1, 2011), a copy of which is attached as Exhibit "J" (" ... no psychotherapist-patient privilege arose at all. This is because Defendant King underwent the evaluation knowing that the results would be provided to his employer. The report includes Defendant King's explicit release of the information contained in the report to his employer"; citing, inter alia, Siegfried, supra).

Caver v. City of Trenton, 192 F.R.D. 154 (D.N.J. 2000) (Hughes, M.J.), relied on by Defendants in their October 1, 2021 letter, is distinguishable for reasons which are apparent in the opinion itself. As Judge Hughes wrote, unlike in Valentin v. Bootes, 325 N.J. Super. 590, 740 A.2d 172 (Law Div. 1998), Siegfried, supra, Miller v. Pancucci, 141 F.R.D. 292 (C.D. Cal. 1992), and J.N. v. Bellingham Sch. Dist. No. 501, 871 P.2d 1106 (Wash. App. 1994), the subject defendant in Caver "clearly had an expectation of confidentiality. He was told and reassured that the psychological records and reports would be kept strictly confidential, and would not be disclosed to the City of Trenton personnel." Caver, 192 F.R.D. at 162 (citations omitted). ~~No lack of confidentiality of expectation.~~ See also Valentin, supra, 740 A.2d at 178-79 ("It is obvious from this description that when an applicant consults with this psychologist, he understands that the psychologist will be reporting back to the police department. Confidentiality between psychologist and patient is not expected in this situation. If a patient makes a communication expecting it to be disclosed to a third

8

party who is not involved in the patient's treatment, the psychologist-patient privilege does not apply.") Furthermore, the issue of confidentiality is not determinative of whether a communication between a patient and psychotherapist is privileged because <u>Jaffee</u> requires that the communications also be made "in the course of treatment." <u>Jaffee, supra</u>, 518 U.S. at 15.

Nor is the case at bar akin to <u>Williams v. District of Columbia</u>, No. 96-0200-LFO, 1997 WL 22491 (D.D.C. Apr. 25, 1997), also cited by Judge Hughes, in which the psychiatrist only reported back to the police department with a "yes" or "no" recommendation on whether the officer should return to active duty, without disclosing any confidential communications. <u>See discussion</u> in <u>Caver</u>, 192 F.R.D. at 162-63. ~~[redacted]~~ reports on both officers – those that have been located – state

REDACTED

9

### III. CONCLUSION

For all of these reasons, and those already expressed in Plaintiffs' various discovery letters which Plaintiffs provided to the Court, Defendants should be required to turn over the officers' fitness for duty reports in unredacted format. It is further understood that the Court may order that such records be produced for *in camera* inspection. Additionally, as discussed by the parties and as mentioned during the September 29, 2021 telephone conference with the Court, those Defendants who have not already done so need to certify their September 8, 2021 supplemental discovery responses. Finally, Plaintiffs also suggest that the Court order the Defendants to make further and more strenuous efforts to locate that missing Dixon 2012 fitness for duty report and the missing ~~[redacted]~~ for Orndorf.

Respectfully submitted,

LOUIS CHARLES SHAPIRO

cc: A. Michael Barker, Esquire
Thomas B. Reynolds, Esquire
Justin T. Loughry, Esquire