# REYNOLDS & HORN, P.C.



ATTORNEYS AT LAW
*A PROFESSIONAL CORPORATION*

WWW.REYNOLDSHORNLAWYERS.COM

116 South Raleigh Avenue
Suite 9B
Atlantic City, New Jersey 08401
Telephone  (609) 703-9663
Fax  (609) 939-2386

THOMAS B. REYNOLDS
treynolds_rhlaw@comcast.net
Direct (609) 335-4719

STEVEN M. HORN  †
noappeal@comcast.net
Direct (609) 703-9663

† CERTIFIED BY THE SUPREME COURT OF
NEW JERSEY AS A CIVIL TRIAL ATTORNEY

January 3, 2022

<u>Via ECF</u>
Hon. Ann Marie Donio, U.S.M.J.
U.S. District Court for the District of New Jersey
Mitchell H. Cohen U.S. Courthouse, Room 2010
1 John F. Gerry Plaza
4th & Cooper Streets
Camden, New Jersey  08101

      Re:  Audra Capps, et al. v. Joseph Dixon, et al.
           Case No.:  1:19-cv-12002-RMB-AMD

          Tanika Joyce v. Joseph Dixon, et al.
           Case No.:  1:20-cv-01118-RMB-AMD

**Plaintiffs' Motion for Sanctions against Defendant Joseph Dixon**

Dear Judge Donio:

    Please accept this letter brief on behalf of defendant Joseph Dixon in opposition to plaintiffs' motion for sanctions in the above matters.

    The pertinent facts of this matter establish that Dixon has not obstructed discovery, destroyed evidence or engaged in conduct warranting a finding that Dixon is liable for sanctions under Fed.R.Civ.P. 37(e) and applicable law.  Plaintiffs' motion should be denied for the reasons which follow.

## **RELEVANT FACTS AND PROCEDURAL BACKGROUND**

The instant civil actions involve the allegations of plaintiffs Capps and Joyce that excessive force was utilized by then Officer Dixon, while performing his duties as a police officer for the City of Millville, in effecting the arrests of Audra Capps on February 25, 2018, and of Tanika Joyce on March 24, 2018.  In May of 2019, officer Dixon was assigned to police administrative desk duty, having learned he was the subject of an investigation by the State Attorney General's Office; Dixon remained on desk duty until he submitted his resignation to the Chief of Police on October 19, 2019.  [See Exhibit 1, attached hereto, excerpt of Dixon's deposition transcript, Volume II (taken November 29, 2021), pages 299-302.]  As reflected in the Superior Court Criminal Division transcript of Dixon's guilty plea on November 20, 2019 (attached to plaintiffs' motion documents as Exhibit B), Dixon's pleas of committing aggravated assaults upon Audra Capps and Tanika Joyce were part of a "negotiated plea agreement", under which Dixon preserved his position, and application to the court, that the guilty pleas be subject to a civil reservation such that they not be admissible in related civil litigation.  The plea agreement was described during the hearing by prosecutor Brian Uzdavinis as follows:

> "This is a negotiated plea agreement where in exchange for defendant's waiver of indictment and plea of guilty to an accusation charging two counts of third degree aggravated assault and entering that consent order, the State in exchange has agreed to recommend a sentence of probation conditioned on 364 days in county jail. And we're aware as well, the pending motion for the civil reservation." Transcript, p. 4.

At Dixon's Superior Court sentencing hearing on January 17, 2020, prosecutor Uzdavinis further explained the negotiated plea agreement, stating that the Attorney General's

> "review resulted in a decision to potentially charge and indict him with official misconduct,  a pattern of official misconduct, additional aggravated assault charges, tampering with public records for not accurately describing everything that occurred during those arrests.  He was facing, if convicted, a mandatory minimum period in prison before parole of at least ten years."  See Transcript of Superior Court Sentencing Hearing of January 17, 2020, attached hereto as Exhibit 2, at p. 10.

In his ruling on Dixon's the motion for a civil reservation and upon Dixon's sentence, Superior Court Judge Malestein noted that Dixon in entering his plea, faced a Hobson's choice, in that he essentially had no choice, stating:

> "(Dixon) came forward, he had a Hobson's choice, just as McIntyre did in
> State v. McIntyre, so he was facing the very real potential of
> being indicted on a second degree official misconduct and a  pattern of official misconduct.  As Counsel indicated, it's a very tough statute.  It's extraordinarily difficult for those that are charged with it because you face a mandatory minimum of five years in State prison without parole and on a pattern of official misconduct if you get prosecuted and convicted of that in addition to the official misconduct

counts, it has to run consecutive. So there is a very real possibility that he faced ten years without parole. That doesn't do any good to a victim who's looking to receive monetary compensation and to deal with a state prison inmate to continue on with that litigation. That's neither here nor there, but that doesn't help matters either.  So but he was forced with a Hobson's choice. . . . he didn't really have a choice."  January 17, 2020 Sentencing Transcript, pages 18-19.

Judge Malestein also stated that his determination at that time was to deny the request for a civil reservation "without prejudice", and further expressed his uncertainty as to whether a Federal District Court judge would follow the State court decision, or how the Federal District Court would rule on the issue if and when brought before it.  See Sentencing transcript, pages 17, 21.

Dixon intends to request this Court, at the conclusion of fact discovery and prior to trial, to consider all the circumstances, revisit the issue of a civil reservation, and enter an Order precluding admission of Dixon's guilty pleas into evidence at the time of trial[1].  In pleadings and fact discovery undertaken to date in this litigation, Dixon has maintained he did not violate plaintiffs' constitutional and common law rights, and has defended his conduct at issue, as undertaken in the good faith execution of his duties as a police officer, and without any intent to cause injury to plaintiffs.  Dixon has acknowledged that in a negotiated plea agreement, Dixon pled guilty, based on retrospect and other factors, to reckless conduct in the use of greater forced than was necessary, in hindsight, to effect the arrest.  See Dixon Answer to Joyce Interrogatory #3, attached to plaintiffs' moving papers as Exhibit G.

Contrary to assertions of plaintiffs' counsel in the moving papers, Dixon has not obstructed discovery, deleted or destroyed evidence, or committed acts of evidence spoliation in this matter.  In the course of fact discovery provided to date in this matter, Dixon has produced certified answers to interrogatories in each case, has provided supplemental responses separately certified by Dixon, and has appeared for and answered all questions at 2 recent deposition sessions on October 21 and November 29.  Dixon has complied with all of plaintiffs' discovery demands in written and testimony form, and plaintiffs' allegations of bad faith, deceptive and intentional misconduct during discovery proceedings in this civil litigation, on the part of Dixon, are without merit.

In his certified discovery responses and deposition testimony on ESI issues[2], Dixon reiterated that he has no knowledge or recollection of making any electronic communications, by emails, texts or social media posts, that have anything to do with the lawsuits involving Capps, Cottman or Joyce.  Dixon Dep. at 55:22-59:1; 60:5-63:8; 91:9-92:20; 106:4-18.

---

[1] It is anticipated that the evidential effects of the individual guilty pleas entered in Municipal Court by Capps and Joyce, following their arrests at issue in this litigation, will also be the subject of pre-trial motions.  Notably, as stated in paragraph 64 of plaintiff Capp's second amended complaint, plaintiff Capps does not challenge the basis for the motor vehicle stop on February 25, 2018, and does not challenge the probable cause for her arrest.  Similarly, plaintiff Joyce in her amended complaint at paragraph 80, states that in this action, plaintiff Joyce does not challenge whether there was probable cause for her arrest.

[2] Plaintiff's motion Exhibit M consisted of the substantial majority of the transcript of Dixon's ESI deposition taken 10/21/21; for completeness, attached hereto as Exhibit 3, are pages 57-72 of the Dixon ESI deposition transcript, which were not included in Exhibit M.

January 3, 2022
Page 4

     Dixon described the circumstances of his exchanging his cellphones over the years, and his limited understanding of whether data from his earlier phones may have been preserved and or transferred to the "cloud"; Dixon testified he is unaware as to how he could access information from the cloud or from his prior phones. See Dixon Dep. 24:12-28:24.

     During his ESI deposition, Dixon explained the timing and reasons for his deactivating of his prior Facebook account, for personal mental health reasons, and Dixon described his unsuccessful efforts to recover the prior social media accounts. Dixon Dep. 77:11-83:9. As set forth in plaintiff's moving papers, Dixon acknowledged that the references to Facebook posts, attributable to him in NJ Advance Media reports, regarding international terrorism and a comment on a video depicting a peaceful arrest in Florida, possibly reflect statements made by him, although Dixon maintained that he cannot verify the exact verbiage of those statements when made. Plaintiffs, as well as NJ Advance Media reports, have not provided any context surrounding these posts.

## LEGAL ARGUMENT

**Given the totality of the circumstances, plaintiffs have not established, factually and legally, that an Order pursuant to F.R.Civ.P. 37 for sanctions against defendant Dixon for failure to provide discovery, is justified or warranted.**

     Plaintiffs have not met applicable standards for imposing sanctions for failure to preserve electronically stored information under Fed.R.Civ.P. 37(e), which provides that sanctions may be issued if ESI that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it. Id. Plaintiffs' submission fails to establish that Dixon had a duty to preserve any information from prior electronic data, under these circumstances where there has been no indication of how these may be discoverable or lead to the discovery of admissible evidence. Dixon's arrests, during the performance of his official law enforcement duties, of plaintiffs Capps and Joyce (as well as that of Cottman), and more particularly the claims that Dixon used excessive force to physically take down the plaintiffs to effect the arrests, were captured on video and have been the subject of testimony of those present at the scenes of each arrest. As established in the video evidence, the duration of force in each instance occurred within a matter of seconds, and the Millville police officers involved in each of the subject arrests prepared reports and have provided sworn testimony concerning the subject incidents. Assuming the alleged social media posts relied on by plaintiffs were made by Dixon, expressing his concern about foreign terrorists and/or his commentary on an unknown video depicting an unrelated police arrest, those references have no evidential value toward a determination of plaintiffs' claims in this matter. Neither do Dixon's prior text messages, in his personal capacity, have any evidential value in this matter. Plaintiff has not proven Dixon had a duty that was violated.

     Additionally, plaintiffs are unable to establish a finding of prejudice from the alleged loss of information, under F.R.Civ.P. 37(e)(1). Contrary to the divergent factual circumstances underlying the caselaw cited in the plaintiffs' supporting Letter Brief, Plaintiffs cannot credibly claim prejudice, where here there is no indication that any lost electronic information from Dixon's private devices had direct evidential value. Plaintiffs offer only speculation and conjecture, rather than facts, to support the vague and non-specific claims that Dixon has

January 3, 2022
Page 5

concealed or destroyed material evidence, and that plaintiffs were somehow prejudiced in this litigation, as a result of Dixon's actions.

Defendant Dixon also relies on F.R.Civ.P. 37(e)(2), providing that the Court may impose sanctions 'only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation.' As noted above, plaintiffs have made no showing that Dixon engaged in intentional misconduct during the discovery process. Any lost information, as described by Dixon, who is clearly not an information technology expert, cannot be reasonably ascribed to any intent to deprive plaintiffs Capps, Joyce, or Cottman, of any relevant and material evidence. There is no basis to conclude that Dixon knowingly engaged in deceptive conduct or conduct in violation of discovery obligations, and plaintiffs' application for sanctions should be denied.

## **CONCLUSION**

For all of the foregoing reasons, defendant Joseph Dixon respectfully requests that the Court deny plaintiffs' motions for sanctions.

Thank you for your Honor's consideration in this matter.

        Respectfully submitted,
        **REYNOLDS & HORN, PC**

By:   */s/ Thomas B. Reynolds*
       Thomas B. Reynolds
       Attorney for Defendant
       Joseph Dixon

Exhibits 1-3 (attached)

Cc:  Louis Shapiro, Esquire (Via ECF)
     Michael Barker, Esquire (Via ECF)
     Justin Loughry, Esquire (Via ECF)

TBR/e