[Docket No. 83]
[Docket No. 71]

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| AUDRA CAPPS and<br>DOUGLAS ROBERT GIBSON, JR.,<br><br>    Plaintiffs,<br><br>    v.<br><br>JOSEPH DIXON, et al.,<br><br>    Defendants. | Civil No. 19-12002 (RMB/AMD)<br><br>**OPINION** |
| TANIKA JOYCE,<br><br>    Plaintiff,<br><br>    v.<br><br>JOSEPH DIXON, et al.,<br><br>    Defendants. | Civil No. 20-1118 (RMB/AMD)<br><br>**OPINION** |

**APPEARANCES**

Louis Charles Shapiro
Louis Charles Shapiro, P.A.
1063 East Landis Avenue
Vineland, NJ 08362

   *On behalf of Plaintiffs*

Thomas B. Reynolds
Reynolds & Horn, P.C.
116 South Raleigh Avenue, Apt. 9B
Atlantic City, NJ 08401

   *On behalf of Defendant Joseph Dixon*

A. Michael Barker
Greg Paul Dilorenzo
Barker, Gelfand & James, P.C.
210 New Road, Suite 12
Linwood, NJ 08221

*On behalf of Defendants the City of Millville and Police Chief Jody Farabella*

**BUMB, U.S. District Judge**

This matter comes before the Court upon the Motion for Reconsideration filed by Defendants Police Chief Jody Farabella ("Chief Farabella"), the City of Millville ("Millville"), and Officer Bryan Orndorf ("Orndorf")[1] (collectively, "Defendants"), in two separate, but similar cases that have been consolidated for purposes of discovery: *Capps and Gibson v. Dixon, et al.* (Civ. No. 19-12002) [Docket No. 83] and *Joyce v. Dixon, et al.* (Civ No. 20-1118) [Docket No. 71]. All plaintiffs and defendants in these two cases are represented by the same legal counsel. Accordingly, the Court will address the current motion, which has been filed in both cases, in this single Opinion. For the reasons set forth below, Defendants' motion shall be **DENIED**.

**I.     FACTUAL BACKGROUND**

The Court recites herein only the facts necessary for its consideration of the pending motion.

**A.     Arrest of Audra Capps**

Plaintiffs Audra Capps ("Capps") and her husband Douglas Robert Gibson Jr.

---

[1] Claims have only been asserted against Officer Orndorf in *Capps and Gibson v. Dixon, et al.* (Civ. No. 19-12002).

("Gibson") asserted various violations of their constitutional rights and state tort claims after a traffic stop of Capps by Officer Orndorf while Capps was driving on State Highway 49 in Millville. [Capps Second Amended Complaint ("Capps SAC"), Civ. No. 19-12002, Docket No. 58, at ¶ 40.] Officer Joseph Dixon ("Dixon") joined Orndorf at the scene, ordered Capps out of her vehicle, and conducted field sobriety tests, which Capps failed. [*Id.* at ¶¶ 41, 44, 49.] Dixon began to place Capps under arrest, and after Capps "began to back up so as not to be handcuffed," Dixon placed her in a headlock. [*Id.* at ¶¶ 51, 54-55.] Capps alleges that while Dixon held her in a headlock, he "lifted her off the ground, whirled her around in the headlock, swung [her] over his hip while she was still in a headlock, [] violently slammed this much smaller female suspect to the hard pavement below," and then fell on top of her with all his weight. [*Id.* at ¶¶ 56-57.]

Capps contends that Orndorf also used excessive force against her by placing his knee and/or his weight on Capps's back while she was on the ground to assist Dixon with the arrest. [*Id.* at ¶ 58.] Capps was then placed in the back of a patrol car and taken to the Millville Police Department where she was charged with multiple offenses. [*Id.* at ¶¶ 59, 67.] Capps alleges that she requested, but was denied, medical treatment while in the patrol car, and that after being processed at the Millville Police Department, she went to the hospital and was diagnosed with several serious injuries for which she had to undergo multiple surgeries and long-term treatment. [*Id.* at ¶¶ 61-62, 119-136.]

### B.    Arrest of Tanika Joyce

On March 24, 2018, Plaintiff Tanika Joyce ("Joyce") was at a Shop Rite in Millville when the police were called "in response to an alleged shoplifting complaint" involving Joyce's minor child, and one of the officers who reported to the scene was Dixon. [Joyce Second Amended Complaint ("Joyce SAC"), Civil No. 20-1118, Docket No. 47, at ¶¶ 56-58.] Joyce allegedly refused to provide her identification to the officers upon their request, and thereafter, Dixon began to place Joyce under arrest. [*Id.* at ¶¶ 58-61.] After Joyce allegedly pulled away and asked Dixon why she was being arrested, he allegedly "slammed Joyce to the ground, causing her to land on her hip and hit her head on the floor," where he sprayed her with pepper spray. [*Id.* at ¶¶ 61-62.] Joyce contends Dixon used a "jiu jitsu" move to take her to the ground that was learned outside of his police training. [*Id*. at ¶ 68.] Joyce was transported to the police station where she was met outside by emergency medical personnel who then transported her to Inspira Hospital in Vineland, New Jersey for treatment. [*Id.* at ¶¶ 66-67.]

### C.    Capps's and Joyce's Factual Allegations and Claims

Capps and Joyce both assert claims arising under 42 U.S.C. § 1983 ("Section 1983"), arguing that Officer Dixon's (and, in Capps's case, Officer Orndorf's) takedown maneuvers violated their rights under the Fourth and Fourteenth Amendments to the United States Constitution. [Capps SAC at ¶¶ 1, 97; Joyce SAC at ¶ 1.]

With respect to Chief Farabella and the City of Millville, Capps and Joyce allege that based on a number of documented instances involving Dixon's use of force, his propensity to use excessive force was well-known such that Dixon should have been removed from active duty before the incidents involving Capps or Joyce ever occurred. [Capps SAC at ¶ 281(6); Joyce SAC at ¶ 198(6).] Capps and Joyce argue that Dixon "displayed reckless, negligent and/or dangerous conduct as a police officer" that his supervisors knew about or should have known about dating back to the summer of 2013, including an unauthorized technique by Dixon during a vehicular pursuit, which occurred just five (5) months after Dixon joined the police force and for which Dixon was suspended. [Capps SAC at ¶¶ 172-173; Joyce SAC at ¶¶ 96-97.] Capps and Joyce contend that during his employment, Dixon was also disciplined for "not properly submitting evidence and for missing court proceedings," and that he had posted inappropriate comments about police officers' use of force on his personal Facebook account. [Capps SAC at ¶¶ 175-178; Joyce SAC at ¶¶ 99-102.] According to Capps and Joyce, despite Dixon's well-documented and routine use of excessive force, the Millville Police Department looked the other way, including by maintaining a policy that did not require the review of all footage from mobile video recorders ("MVRs") that had captured instances where Dixon used excessive force. [Capps SAC at ¶¶ 180-86; Joyce SAC at ¶¶ 103-109.]

Capps and Joyce both also allege that Chief Farabella was personally aware of the issues involving Dixon, that he spoke to Dixon on several occasions about his use of force, and that Chief Farabella had even told Dixon on one occasion, in particular,

that "using the type of force he used was not the image of a police officer." [Capps SAC at ¶ 257; Joyce SAC at ¶ 177.] Capps and Joyce contend that Millville eventually changed its Use of Force policy in 2019, recognizing that the city's prior policies and procedures were inadequate. [Capps SAC at ¶ 325; Joyce SAC at ¶ 242.] Capps and Joyce contend that the change in the city's policy was, in part, carried out in response to a public report titled "The Force Report," which was a series published on NJ.com and which showed that "Dixon reported using force more than any other police officer in the State of New Jersey." [Capps SAC at ¶ 288; Joyce SAC at ¶ 205.]

## II. PROCEDURAL BACKGROUND

In an Opinion and Order dated May 21, 2021, this Court previously ruled on various motions to dismiss filed by the various defendants in these two different actions. [Civil No. 19-12002, Docket Nos. 80, 81; Civil No. 20-1118, Docket Nos. 68, 69.] This Court denied Dixon's motion to dismiss the Section 1983 claims brought against him by Capps and Joyce, rejecting Dixon's argument "that the takedown maneuver he applies is permissible," given that "[t]he Court is not a factfinder, and it cannot evaluate whether Capps [or Joyce] had a clearly established right to be free from Dixon's takedown until the parties address what actually happened." [*Id.* at 12.]

The Court granted, in part, Orndorf's motion to dismiss Capps's Section 1983 claim against him to the extent that Capps alleged Orndorf had unlawfully failed to intervene with Dixon's use of force, finding that "Capps has not alleged that Orndorf had a reasonable opportunity to intervene." [*Id.* at 13.] However, the Court denied

6

Orndorf's motion to dismiss Capps's "direct Section 1983 claim" that he, too, had used excessive force, declining Orndorf's request that the Court make factual judgments based on the video recording of Capps's arrest in considering Orndorf's motion to dismiss. [*Id.* at 14-15.]

With respect to the remaining defendants, the Court found "that Capps has simply named every Millville police officer who potentially had some supervisory responsibility over Dixon, regardless of when that role existed or how disconnected that supervision was from these events." [*Id.* at 16.] The Court acknowledged that "there are some uncertainties about the applicability of supervisory liability in any [Section] 1983 action, and particularly in cases concerning the Fourth Amendment." [*Id.* at 15.] However, the Court drew a distinction between Chief Farabella's alleged role and that of the other individual police officers who had been named as defendants in light of the specific allegations in Capps's amended complaint (which the Court determined were identical to those asserted by Joyce):

> Unlike the other Supervisory Defendants, Farabella—as the Chief of the Millville Police Department—is undeniably a 'policymaker.' If, as Capps alleges, the Millville Police Department maintained a policy or custom of permitting officers to use excessive force without consequence, Farabella could be liable under [Section] 1983. In addition, Capps has alleged that Farabella knew about Dixon's history of use of force complaints for years before Capps's arrest, and that Farabella was responsible for the internal review of complaints that Dixon received. Capps also alleges specific incidents where Farabella spoke with Dixon about his use of force practices, but ultimately failed to take sufficient corrective measures. At this stage in the litigation, Capps has met her burden and dismissal is not warranted.

[*Id.* at 17, 24-25.]

Regarding Capps's and Joyce's claims against Millville, the Court found that the plaintiffs' *Monell* claims survived the city's motion to dismiss, as the defendants had conceded "that Chief Farabella was a decisionmaker for *Monell* liability purposes," that plaintiffs had "sufficiently alleged that Farabella either knew or should have known that Dixon received use of force complaints at a rate far higher than other officers in the departments, and that whatever measures he took to correct his issue was insufficient." [*Id.* at 20.]

III. **LEGAL STANDARD**

    A. **Motion to Dismiss**

When considering a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005). It is well-settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (*first citing Conley v.*

*Gibson*, 355 U.S. 41, 47 (1957); *then citing Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994); *and then citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

> To determine the sufficiency of a complaint, a court must take three steps. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (alterations in original) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 664, 675, 679 (2009)). A court may "generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (*citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

A district court, in weighing a motion to dismiss, asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." *Twombly*, 550 U.S. at 563 n.8 (*quoting Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)); *see also Iqbal*, 556 U.S. at 684 ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("*Iqbal* . . . provides the final nail in the coffin for the 'no set of facts' standard that applied to federal complaints before *Twombly*."). "A motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to

9

state a claim to relief that is plausible on its face.'" *Malleus*, 641 F.3d at 563 (quoting *Twombly*, 550 U.S. at 570).

### B.     Motion for Reconsideration

A motion for reconsideration is "an extraordinary remedy that is granted 'very sparingly.'" *Bracket v. Ashcroft*, 2003 WL 22303078, at *2, Civ. No. 09-3988 (WJM) (D.N.J. Oct. 7, 2003). There are three grounds for granting a motion for reconsideration: (1) an intervening change in controlling law has occurred; (2) evidence not previously available has become available; or (3) it is necessary to correct a clear error of law or prevent manifest injustice. *Id.*; *see also Carmichael v. Everson*, 2004 WL 1587894, at *1, Civ. No. 03-4787 (DMC) (D.N.J. May 21, 2004). The "proper ground for granting a motion to reconsider, therefore, is that the matters or decisions overlooked, if considered by the court, 'might reasonably have altered the result reached.'" *G–69 v. Degnan*, 748 F.Supp. 274, 275 (D.N.J. Oct. 17, 1990) (*quoting New York Guardian Mortgagee Corp. v. Cleland*, 473 F.Supp. 409, 420 (S.D.N.Y. Jan. 8, 1979); *United States v. Int'l Bus. Machines Corp.*, 79 F.R.D. 412, 414 (S.D.N.Y. July 19, 1978)).

"A party seeking reconsideration must show more than a disagreement with the Court's decision, and 'recapitulation of the cases and arguments considered by the court before rendering its original decision' fails to carry the moving party's burden." *G–69*, 748 F. Supp. at 275 (*quoting Carteret Sav. Bank, F.A. v. Shushan,* 721 F. Supp. 705, 706 (D.N.J. Oct. 10, 1989)). It is the moving party's burden to show that

"'dispositive factual matters or controlling decisions of law' were brought to the court's attention but not considered." *P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp.*, 161 F. Supp. 2d 349, 353 (D.N.J. Aug. 24, 2001) (*quoting Pelham v. United States*, 661 F.Supp. 1063, 1065 (D.N.J. June 4, 1987)).

## IV.   ANALYSIS

The Court analyzes, in turn, the arguments made by Defendants Chief Farabella, Officer Orndorf, and the City of Millville in support of their pending motion.

### A.   Plaintiffs Have Stated Plausible Claims Against Chief Farabella

Chief Farabella argues that this Court was required to find that he is entitled to qualified immunity when considering his prior Motion to Dismiss Capps's and Joyce's claims against him arising under a theory of supervisory liability. [Defendants' Brief at 3.] Chief Farabella criticizes this Court's reliance on *Barkes v. First Correctional Medical, Inc.*, in which the Third Circuit "identified two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates. First, liability may attach if they, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm. . . Second, a supervisor may be personally liable under [Section] 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." 766 F.3d 307, 316 (3d Cir. 2014) (citations omitted) (internal quotation marks omitted).

11

Chief Farabella is correct that the constitutional claims at issue in *Barkes* involved an Eighth Amendment condition of confinement challenge, and that the Third Circuit expressly reserved "for another day the question whether and under what circumstances a claim for supervisory liability derived from a violation of a different constitutional provisions. . ." *Id.* at 320. Chief Farabella admits that "prong one" of the standard articulated by the Third Circuit in *Barkes* is appropriate for the Court to consider "to determine potential *Monell* liability for the City of Millville." [Defendants' Brief at 4.] However, Chief Farabella also argues that "[i]t was not and is not clearly established that an individual supervisor defendant. . . could be held individually liability for the alleged Fourth Amendment violations by a subordinate **where the individual supervisor defendant had no direct involvement in the underlying challenged conduct**." [Defendant's Brief at 4 (emphasis added).]

Chief Farabella urges the Court to adopt a recent decision from the Second Circuit in which the appellate court determined that after the Supreme Court's decision in *Iqbal*, "there is no special rule for supervisory liability," and "[t]o establish a violation of [Section] 1983 by a supervisor, as with everyone else, then, the plaintiff must establish a deliberate, intentional act on the part of the defendant to violate the plaintiff's legal rights." [Defendants' Brief at 5-6 (*quoting Tangreti v. Bachmann,* 983 F.3d 609, 618-19 (2d Cir. 2020) (citations omitted)).]

Although the Third Circuit has not opined on the parameters of supervisory liability specifically in the context of a Section 1983 claim based on alleged violations

12

of a plaintiff's Fourth and Fourteenth Amendment rights (as alleged by the plaintiffs here and which Chief Farabella has acknowledged [*Id.* at 7]), the Court is satisfied that under existing Third Circuit precedent, one way that supervisory liability may be established in this context is by showing that a supervisor "participated in violating the plaintiff's rights, directed others to violate them, or as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *See Dinote v. Danberg*, 601 F. App'x 127, 131 (3d Cir. 2015) (denying a plaintiff's supervisory liability claims under Section 1983 for alleged violations of a plaintiff's Fourth and Fourteenth Amendment rights during a strip search, in part, because the plaintiff "points to no evidence that these defendants. . . issued any direction with respect to the search") (*citing Barkes*, 766 F.3d at 316)).

To Defendants' point, the Court should have clarified that this standard, which is also articulated by the Third Circuit as "prong two" in the portion of the *Barkes* decision quoted above, provides the Court with a sufficient basis to allow Capps's and Joyce's claims against Chief Farabella to proceed. The Court also finds that this standard is not entirely inconsistent with the more stringent standard for supervisor liability recently adopted by the Second Circuit in *Tangreti*, in that both standards require the trial court to consider a supervisor's own individual actions as they relate to the deprivation of a plaintiff's constitutional rights. This Court also agrees with precedent from other Judges in this District and similarly will decline Chief Farabella's sweeping "invitation to 'correct' the Third Circuit's precedent and hold that supervisory liability in the context of Fourth Amendment excessive force

13

claims is not viable after *Iqbal*." *Cottman v. Farabella, et al.*, Civ. No. 19-14122 (NLH/AMD), at 15, n.6.

In addition, even if the Court applied the more stringent standard for supervisory liability adopted by the Second Circuit in *Tengreti* as Chief Farabella urges it to do, the Court finds that it would have reached the same result and denied Chief Farabella's prior Motion to Dismiss in light of Capps's and Joyce's specific allegations involving Chief Farabella's direct and personal involvement with the alleged misconduct at issue, including allegations that Chief Farabella personally knew about Dixon's propensity to use excessive force, talked to Dixon himself about the issue on multiple occasions, was personally involved with the review process of MVRs and instances where force and excessive force had been used by police officers (including Dixon) but not reviewed, and that Chief Farabella had been personally involved with prior (inadequate) disciplinary measures involving Dixon. Because Capps and Joyce have sufficiently alleged that Chief Farabella's individual actions directly contributed to the deprivation of their constitutional rights, their supervisory liability claims survive at this stage of the litigation. Thus, Chief Farabella's Motion for Reconsideration will be denied.

### B.     Capps Has Stated a Plausible Claim Against Officer Orndorf

With respect to the Capps action, Officer Orndorf argues that the Court erred in declining to review the video and audio recording of the field sobriety tests the arresting officers conducted of Capps and her arrest, arguing that "since the video clearly depicts Capps's back, and Orndorf's knee is not on Capps's back, then

Orndorf's knee cannot logically be on Capps's back." [Defendants' Brief at 12.] The Court is not persuaded by Orndorf's argument, especially considering the requirement for the Court to "accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff" in deciding a motion to dismiss. *Evancho*, 423 F.3d at 351. Of course, Orndorf is correct that the Court is permitted to consider the video, which is attached to Capps's SAC, but the Court is not permitted to then render a judgment on the pleadings. Capps has clearly alleged that Orndorf used excessive force against her during the arrest, and such allegation is permitted at this stage in the litigation whether it was captured on video or not.

The Court is also not persuaded by Orndorf's other arguments—that placing his knee on Capps's back is not objectively unreasonable nor is it a clearly established violation of law for him to do so when effectuating an arrest. Such arguments necessarily depend on the amount of force used, if any, and discovery will reveal whether the video relied upon by Orndorf actually tells the whole story as Orndorf alleges. Orndorf's Motion for Reconsideration will be denied.

      **C.**    **Plaintiffs Have Stated Plausible Claims Against the City of Millville**

The City of Millville has joined in the current Motion for Reconsideration, arguing that this Court's earlier denial of its Motion to Dismiss was based on "only two reasons." [Defendant's Brief at 13.] First, Millville argues that the Court considered "an inaccurate statement of the facts alleged," specifically, that The Force Report relied on by Plaintiffs concerns Dixon's "Use of Force Reports," which are self-reports by police officers regarding when force was used, not external *complaints*

15

concerning Dixon's use of force. The Court finds that this distinction is inconsequential – even if The Force Report consists entirely of Dixon's self-reports, the allegations that he used force (including excessive force) at rates much higher than other police officers remain. Second, Millville argues that it's response in light of Dixon's alleged misconduct was adequate. However, considering the allegations in the light most favorable to Capps and Joyce, which the Court is required to do at this stage, the Court is not persuaded that the city's response was, in fact, appropriate and will once again decline Defendants' request to convert their prior Motions to Dismiss into Motions for Summary Judgment.

### V.  CONCLUSION

For the reasons stated herein, the Motion for Reconsideration filed by Defendants Chief Farabella, Officer Orndorf, and the City of Millville in *Capps and Gibson v. Dixon, et al.* (Civ. No. 19-12002) [Docket No. 83] and *Joyce v. Dixon, et al.* (Civ No. 20-1118) [Docket No. 71] are hereby **denied.** An accompanying Order of today's date will follow.

January 13, 2022                                               s/Renée Marie Bumb
Date                                                                    Renée Marie Bumb
                                                                             U.S. District Judge