# Louis Charles Shapiro, P.A.

*1063 East Landis Avenue*
*Vineland, New Jersey 08360*
*Telephone (856) 691-6800; Facsimile (856) 794-3326*

**LOUIS CHARLES SHAPIRO**
CERTIFIED CRIMINAL TRIAL ATTORNEY
LL.M. IN TRIAL ADVOCACY
MEMBER OF NJ AND PA BARS

**SAMUEL L. SHAPIRO**
ATTORNEY AT LAW
COUNSELOR AT LAW
1940 (ADMITTED TO NJ BAR) - 1996

Email: shap1@prodigy.net
Website: www.louischarlesshapiro.com

August 11, 2022

**BY ELECTRONIC FILING (ECF)**
Hon. Ann Marie Donio, U.S.M.J.
United States District Court for the District of New Jersey
Mitchell H. Cohen U.S. Courthouse, Room 2010
1 John F. Gerry Plaza, 4th & Cooper Streets
Camden, New Jersey 08101

Re:  Audra Capps, et al. v. Joseph Dixon, et al.
Case No.: 1:19-cv-12002-RMB-AMD

Tanika Joyce, et al v. Joseph Dixon, et al.
Case No.: 1:20-cv-01118– RMB-AMD

Barry Cottman v. Joseph Dixon, et al.
Case No.: 1:19-cv-14122–NLH-AMD

Dear Judge Donio:

I write in reply to Defendant Joseph Dixon's July 18, 2022 response with respect to the continued issue of ESI spoliation.

Thus far, Plaintiffs' instincts have been correct when it comes to pressing for electronic discovery in these cases. For instance, as a result of productions subsequent to the City of Millville's initial production in or about April of 2020, Plaintiffs received striking emails which placed Defendant Chief Farabella squarely on notice about Dixon's use of force well before the incidents in these cases. One warning received by Chief Farabella was even 20 days before Dixon assaulted Plaintiff Audra Capps. These email revelations resulted from Plaintiffs appealing for this Court's intervention, and these emails would never have seen the light of day had Plaintiffs not insisted on full and complete electronic discovery. These damaging emails are contained in the expert liability report of Jon Shane, Ph.D., which was produced to defense counsel on July 29, 2022. (The expert

medical reports on damages were produced a couple months prior to that date.)

And with respect to Plaintiffs' ESI spoliation and sanctions motion, Plaintiffs' instincts are likewise correct, such that Plaintiffs should be permitted to re-file their motion, or that it be considered to be re-filed and addressed anew. This is because Dixon's July 18, 2022 submission is an exercise in avoiding the thorny issues at hand.

Aside from the July 18, 2022 submission stating in conclusory fashion that Dixon's text messages have no relevance to Plaintiffs' claims in this matter (see Doc. 168 at p.2), what is truly telling is the admission that "the text messages provided are subsequent to April, 2020 ..." (id.; emphasis added). The reason why that April of 2020 date is significant is because Dixon also testified in his ESI deposition in October of last year that he deleted his "Stevie Joe" Facebook account "around about" April of 2020, though he was already aware of the Capps lawsuit in May of 2019. 10/21/21 Dixon Dep. 77:11-22. Dixon's testimony was as follows:

> Q. Were there any other reasons you decided to deactivate the Stevie Joe account?
>
> A. No.
>
> Q. Just mental health?
>
> A. Correct.
>
> \* \* \*
>
> Q. Do you disagree at all in terms of the time frame about when you deactivated the Stevie Joe account approximately, let's say, April of 2020?
>
> A. I would say that's an approximation but a correct one.
>
> Q. What kind of articles were you seeing?
>
> A. About my arrest.

Id. at 78:7-11, 78:25-79:6. What Dixon's July 18, 2022 submission and his deposition testimony show is that Dixon spoliated his text messages and his Facebook account in the same month. This admission and the testimony show an intentional and systematic destruction of electronic information by Dixon – while litigation was pending. The dots could not be connected more clearly, and this cannot credibly be determined to be a mere coincidence.

Moreover, Dixon's stated reason for terminating his Facebook account does not emerge as credible:

> Q. So what was the reason that you deactivated the account after knowing about the existence of the litigation against you?
>
> A. **Mental health**.
>
> Q. When you say mental health, what do you mean by that?

> A. **I was tired of seeing articles shared about me. So I decided to take a break.**

at 77:24-78:6 (bold added). This explanation is questionable at best when the Court considers that Dixon was seeing articles through both his Facebook account and generally on the internet. Id. at 78:20-24. That aside, Dixon's explanation for deactivating his Facebook account in April of 2020 because of "mental health" also flies in the face of a publicly posted picture on his wife's Twitter account on February 8, 2020. In that photograph, which is still visible on Dixon's wife's Twitter feed (to which the marital privilege presumably would not apply), Dixon is portrayed in a faux prison cap with a gag booking board containing crude and sexual language, next to his wife, at the retirement party for his aunt, who had just retired from the Department of Corrections. See 11/29/21 Dixon Dep. at 307:11-309:10, and Exhibit 49. Dixon apparently had no difficulty being photographed in a prison hat, and having his image posted publicly to a major social media platform, just weeks after he was sentenced in Superior Court on January 17, 2020 for assaulting my two clients. Id. at 306:10-307:8, and Exhibit 48. And yet, all of a sudden, about two months later in April of 2020, his "mental health" compelled him to lose not just his Facebook account but all of his text messages prior to that date.

In my July 6, 2022 letter to Your Honor, I requested that Dixon produce the transcript of the Court's decision on the record made on May 12, 2022 on Plaintiffs' ESI spoliation motion. The Court will recall that it required Dixon to order that transcript and address certain issues based on the ruling. However, Dixon has not produced the transcript. Respectful request is made at this time that Plaintiffs be permitted to file a motion to compel production of the transcript. There is no valid reason why this important document should not be provided to me.

Additionally, still left unresolved from the Court's May 12, 2022 decision was whether Dixon was earlier advised of the need to preserve ESI, and if he was, whether his deposition testimony about when he was on notice was correct or not. Not surprisingly, the July 18, 2022 submission on Dixon's behalf simply states in conclusory fashion that, "The interests of Dixon and his counsel are not in conflict with respect to the issues before the Court ..." That response was predictable, but it deliberately ignores the central issue: What did Dixon know about the preservation of ESI, and when did he know it. Dixon has had the opportunity to address this issue directly. That has not happened. As such, Dixon's assertions about what is or is not relevant discovery are not to be relied upon.

For these reasons, the Court should once and for all enter the following sanctions against Dixon:

> (1) ordering that an adverse inference be entered against Dixon that the jury must assume that the lost ESI was unfavorable to Dixon;
>
> (2) allowing Plaintiffs to introduce evidence at trial on the circumstances of Dixon's destruction of ESI;

(3) awarding Plaintiffs attorney's fees and costs associated with pursuing ESI as to Dixon; and

(4) ordering Dixon to turn over his cell phone and/or cloud data for forensic examination for ESI that was not deleted, with costs of the same assessed against him.

Dixon cannot be allowed to get away with figuratively flushing his electronic information down the toilet, thus depriving Plaintiffs and the jury of relevant evidence. Accordingly, Plaintiffs request that the Court entertain a conference call on these issues.

I thank the Court for its time and attention to these cases.

Respectfully,

LOUIS CHARLES SHAPIRO

cc:   A. Michael Barker, Esquire (By ECF)
      Thomas B. Reynolds, Esquire (By ECF)
      Justin T. Loughry, Esquire (By email)
      Audra Capps and Douglas Robert Gibson, Jr.
      Tanika Joyce