[D.I. 186, 187 in 19-12002]
[D.I. 170, 171 in 20-1118]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| AUDRA CAPPS and DOUGLAS ROBERT GIBSON, JR., | Civil No. 19-12002 (RMB/AMD) |
| Plaintiffs, | |
| v. | |
| JOSEPH DIXON, et al., | |
| Defendants. | |
| TANIKA JOYCE, | Civil No. 20-1118 (RMB/AMD) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| JOSEPH DIXON, et al., | |
| Defendants. | |

**APPEARANCES**:

Louis Charles Shapiro, Esq.
Louis Charles Shapiro, P.A.
1063 East Landis Avenue
Vineland, NJ 08362
    *Counsel for Plaintiffs*

Thomas B. Reynolds, Esq.
Reynolds & Horn, P.C.
116 South Raleigh Avenue
Apartment 9B
Atlantic City, NJ 08401
    *Counsel for Defendant Dixon*

A. Michael Barker, Esq.
Barker, Gelfand & James, P.C.
210 New Road
Suite 12
Linwood, NJ 08221
*Counsel for Defendants Orndorf, Farabella, and City of Millville*

**DONIO**, **Magistrate Judge:**

This matter comes before the Court by way of motion [D.I. 186] of Plaintiffs Audra Capps and Douglas Robert Gibson, Jr. in Civil Action No. 19-12002, and by way of identical motion [D.I. 170] filed by Plaintiff Tanika Joyce in Civil Action No. 20-1118, seeking sanctions against Defendant Joseph Dixon for his alleged spoliation of electronically stored information (hereinafter, "ESI"). Also before the Court is a motion filed by Plaintiffs in both cases [D.I. 187 in Civil No. 19-12002, D.I. 171 in Civil No. 20-1118] seeking to disqualify Thomas B. Reynolds, Esq. and the law firm of Reynolds & Horn, P.C. as counsel for Defendant Dixon. Defendant Dixon filed opposition to both motions. (*See* Letter from Thomas B. Reynolds, Esq. (hereinafter, "Reynolds Letter") [D.I. 188 in Civil No. 19-12002; D.I. 172 in Civil No. 20-1118], May 1, 2023.)[1] The Court has considered the submissions of the parties and decides this matter pursuant to Federal Rule of Civil Procedure

---

[1] Where the filings in both cases are identical, all further citations to docket entries shall be to the *Capps* docket only.

78(b). For the reasons that follow and for good cause shown, Plaintiffs' motions for sanctions are granted in part and denied without prejudice in part, and Plaintiffs' motions to disqualify counsel are denied without prejudice.

The background of these cases is set forth in the Court's prior Opinion dated March 25, 2022 and is incorporated herein by reference. *See Capps v. Dixon*, 593 F. Supp. 3d 146, 148 (D.N.J. 2022). Generally, in these actions, Plaintiffs assert claims pursuant to 28 U.S.C. § 1983 arising out of their arrests on February 25, 2018 and March 24, 2018 by officers of the Millville Police Department, including a claim that Defendant Dixon, a Millville police officer, used excessive force while arresting Plaintiffs. *Id.* The parties have experienced a myriad of discovery issues throughout the litigation of these cases, *see, e.g.*, *id.*, and have participated in numerous discovery conferences with the Court. Indeed, the issues presently before the Court were the subject of prior motion practice and are before the Court again following supplemental discovery and additional letter submissions.

The instant motions arise out of Defendant Dixon's undisputed destruction of ESI – including text messages and a Facebook account – after the complaint in the *Capps* case was filed. Plaintiffs previously filed a motion for sanctions based on

Defendant Dixon's spoliation of ESI, at which time Plaintiffs sought an adverse inference instruction at trial and an order requiring Defendant Dixon to turn over his cell phone or the data cloud equivalent for forensic inspection. (*See* Notice of Motion Regarding Electronically Stored Information [D.I. 118], Dec. 3, 2021.) The Court held a hearing on the motion on May 12, 2022 and, for the reasons set forth in an oral opinion issued on that date, granted in part and dismissed without prejudice in part Plaintiffs' motion. (*See* Order [D.I. 157], May 13, 2022, p. 2.) Specifically, the Court granted the motion insofar as Plaintiffs requested that Defendant Dixon's cloud data be downloaded and reviewed by Defendant Dixon and defense counsel and that any relevant information be produced to Plaintiffs, but dismissed the motion with respect to any other relief requested by Plaintiffs at that time without prejudice to Plaintiffs' right to file a renewed motion. (*See id.*) As set forth in the oral opinion, the Court concluded that that there is "no dispute that defendant, Dixon, destroyed ESI after" the *Capps* lawsuit was filed and that Defendant Dixon's text messages and Facebook account should have been preserved for purposes of determining whether they contained relevant discovery. (*See* Transcript of Telephone Status Conference (hereinafter, "Transcript") [D.I. 182], May 12, 2022, pp. 22:17-23, 24:10-14.) However, because the record did not demonstrate

that the information could not be restored or replaced through additional discovery, spoliation sanctions were not appropriate at that time. (*Id.* at pp. 24:24-25:2.) The Court directed Defendant Dixon to "download the cloud data and review such data with his attorney, . . . provide any relevant text messages to Plaintiffs' counsel, and . . . file a status letter with the Court[.]" (Order [D.I. 157], May 13, 2022, pp. 2-3.) Defendant Dixon's counsel thereafter filed a letter stating that Defendant Dixon downloaded his text messages, that defense counsel reviewed the text messages, and that "none of these numerous text messages have any relevance to the issues raised in the instant matters involving the arrests that Dixon made of plaintiff Capps in February of 2018 and of plaintiff Joyce in March of 2018." (Letter from Thomas B. Reynolds, Esq. [D.I. 165], July 5, 2022, pp. 1-2.) Defense counsel further represented that none of the text messages pre-date April 2020. (*Id.* at p. 1.) Therefore, text messages do not exist for a two-year period subsequent to the arrests of Plaintiffs Capps and Joyce.

Plaintiffs' prior motion for spoliation sanctions also raised a potential conflict of interest issue between Defendant Dixon and his attorney. Specifically, the prior sanctions motion set forth Defendant Dixon's ESI deposition testimony in which Defendant Dixon "testified under oath that he did not become aware

of the need to preserve ESI until the Court issued an order" on September 29, 2021 "requiring him to sit for his deposition." (Transcript at p. 26:16-20.) This testimony "place[d] counsel in a difficult position, for if counsel failed to advise [Defendant Dixon] of his duty to preserve, as defendant, Dixon, testified under oath, then counsel may be in a position to be subject to potential sanctions." (*Id.* at p. 27:5-9.) The Court further noted that if counsel had in fact advised Defendant Dixon of the duty to preserve ESI earlier in the litigation, then counsel may be "subjecting his client to potential perjury allegations." (*Id.* at p. 27:10-13.) The Court thus required defense counsel to "advise the Court concerning whether counsel can continue to represent Defendant Dixon in these matters[.]" (Order [D.I. 157], May 13, 2022, p. 3.) Defendant Dixon's counsel thereafter filed a letter stating in a conclusory manner that "[t]he interests of Dixon and his counsel are not in conflict with respect to the issues before the Court, and Dixon's defense is prepared to proceed to a conclusion of these matters in a timely manner and in accordance with the law." (Letter from Thomas B. Reynolds, Esq. [D.I. 168], July 18, 2022, p. 2.)[2]

---

[2] By Order dated September 15, 2022, the Court administratively terminated these cases, and the cases remained closed until April 4, 2023.

Plaintiffs have now filed renewed motions for spoliation sanctions and also seek to disqualify Defendant Dixon's counsel from continuing to represent Defendant Dixon in these matters. In their motions for sanctions, Plaintiffs seek an order providing (1) that an "adverse inference shall be read at the time of trial, that the jury must assume that the ESI lost was unfavorable to Defendant Dixon;" (2) that Plaintiffs may "introduce evidence at trial on the circumstances surrounding Dixon's destruction of ESI;" (3) that "Defendant Dixon shall turn over his cell phone or the data Cloud equivalent, encompassing all ESI that has not already been deleted, for a forensic inspection and copying[;]" and (4) an award of attorney's fees and costs "associated with seeking ESI from Defendant Dixon following the issuance of Plaintiffs' July 28, 2021 deficiency letter." (*See* Proposed Order [D.I. 186-4].) Plaintiffs note Defendant Dixon's representation that none of the text messages recovered pre-date April 2020 and Defendant Dixon's admission that he deleted his Facebook account in April 2020, and Plaintiffs contend that this "convergence of events" in April 2020 "reveals an intentional and systematic destruction of electronic information by Dixon while litigation was already underway, and months after receiving Plaintiffs' written discovery requests seeking ESI." (Letter from Louis Charles Shapiro, Esq. [D.I. 186-1, 186-2], Apr. 14, 2023, pp. 18,

20.) Moreover, Plaintiffs note that after deleting his Facebook account in 2020, Defendant Dixon testified that he attempted to restore the account in early 2021, yet Defendant Dixon also testified that he was not advised of the need to preserve evidence until September 2021. (*Id.* at p. 14.) Plaintiffs question "[i]f Dixon was not aware of the need to preserve ESI until September 30, 2021, why would he separately go looking to see if he could reactivate his [] Facebook account eight or nine months before?" (*Id.*) Plaintiffs argue that Defendant Dixon's testimony is "inconsistent at best, and false at worst" and that "[t]here can be no clearer case for the imposition of severe sanctions." (*Id.* at pp. 14, 20.)

Defendant Dixon's destruction of ESI also gives rise to Plaintiffs' motions for disqualification of counsel, as Defendant Dixon testified during his ESI deposition that he did not understand his duty to preserve ESI until September 2021. (Letter from Louis Charles Shapiro, Esq. [D.I. 187-1], Apr. 14, 2023, p. 4.) Plaintiffs assert that "Dixon could be subjected to potential perjury allegations" if his counsel "did properly advise him" on Defendant Dixon's duty to preserve ESI, but "if Dixon's sworn deposition testimony . . . really is true, that means his counsel did not adhere to his duty to advise his client to preserve ESI." (*Id.* at p. 5.) Plaintiffs argue that these circumstances constitute

a conflict of interest which require disqualification of counsel pursuant to New Jersey Rules of Professional Conduct (hereinafter, "RPCs") 1.7 and 3.7. (*Id.* at pp. 5-10.)

In opposition to both motions, Defendant Dixon filed a four-page letter brief in which he "admits that he is unable to retrieve and produce text messages from pre-April, 2020, or his prior Facebook account contents, as they existed in 2017 through 2018" and asserts that "an instruction can be tailored to advise the jury that it may reasonably infer that Dixon deleted information that was adverse to his defenses in this litigation[.]" (Reynolds Letter at p. 3.) Defendant Dixon also argues, however, that "Plaintiff[s'] motions for spoliation are without merit and should be denied." (*Id.*) Defendant Dixon contends that if the Court finds that spoliation of relevant evidence occurred, the measures to be implemented should be no greater than necessary to cure any prejudice. (*Id.*) As to Plaintiffs' motions for disqualification, Defendant Dixon states only that "the alternate requests by plaintiff[s] to disqualify Dixon's counsel and hold additional discovery and hearings into the attorney-client communications, are unreasonable and inappropriate under the circumstances. Disqualification of counsel, based on a perceived need to make further inquiry into attorney-client privileged communications, will not advance any party's interests in this matter." (*Id.*)

In reply, Plaintiffs note that while Defendant Dixon "concedes on the necessity of the remedy of an adverse jury instruction[,]" Defendant Dixon "fails to address . . . the circumstances of his evidence destruction [or] . . . the production of what remains of his phone cloud data" and "ignores" Plaintiffs' request for attorney's fees and costs. (Letter from Louis Charles Shapiro, Esq. [D.I. 190], May 8, 2023, p. 8.) Plaintiffs also note that Defendant Dixon failed to address "whether he was advised by counsel at the commencement of litigation to preserve ESI (which would render his later ESI deposition testimony false), or whether he was never so advised." (*Id.*) Finally, Plaintiffs argue that Defendant Dixon's counsel was required by RPC 1.6 to rectify Defendant Dixon's deposition testimony to the extent the testimony was false. (*Id.* at pp. 8-9.)

The Court first addresses Plaintiffs' motions for spoliation sanctions. "Spoliation is 'the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.'" *Mosaid Techs. Inc. v. Samsung Elecs. Co.*, 348 F. Supp. 2d 332, 335 (D.N.J. 2004)(quoting *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 430 (S.D.N.Y. 2004)). Federal Rule of Civil Procedure 37(e) provides the legal framework for

evaluating sanctions when ESI that should have been preserved is lost. Specifically, Rule 37(e) provides:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
>> (A) presume that the lost information was unfavorable to the party;
>>
>> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>>
>> (C) dismiss the action or enter a default judgment.

FED. R. CIV. P. 37(e).

In accordance with this framework, the Court first determines whether spoliation of ESI has occurred and whether the loss of ESI occurred at a time when litigation was pending or reasonably foreseeable. Defendant Dixon now "stipulates that Dixon, after the institution of the lawsuits and while represented by counsel, has failed to preserve his cellphone text messages, he

has terminated his Facebook account, and Dixon is unable to produce any of his previous texts and social media posts that existed in 2017 and 2018" and confirms that no text messages exist prior to April 2020. (Reynolds Letter at p. 3.) Given this stipulation, there is no dispute that Defendant Dixon spoliated ESI during a time when such information should have been preserved.

Although admitting to the spoliation of ESI, Defendant Dixon attempts to justify such spoliation by stating that he did not believe the ESI was relevant to the claims in these cases. (*See id.*) The Court rejects Defendant Dixon's continued assertion that the spoliated ESI was not required to be preserved. As noted above, the Court already addressed the relevance of Defendant Dixon's social media posts and text messages and concluded in its May 12, 2022 oral opinion that such discovery potentially contained relevant information. (Transcript at pp. 23:18-24:14.) Defendant Dixon's text messages and Facebook account fell within the confines of Plaintiffs' discovery requests,[3] and the data therefore should

---

[3]   For example, the *Capps* Plaintiffs sought, *inter alia*, "all physical and electronic information, including but not limited to, electronic data storage, cellular telephone data, digital images, computer images, cache memory, searchable data, emails, text messages, any and all online social or work related websites, entries on social networking sites (including but not limited to, Facebook, Twitter, SnapChat, Instagram, MySpace, etc.) . . . and any other information and/or data and/or things and/or documents which may be relevant to any claim or defense in this action."

have been preserved until any objections to production were resolved by the Court. By unilaterally deeming the data irrelevant and deleting ESI, Defendant Dixon deprived the Court of the ability to assess whether Defendant Dixon's social media posts and text messages in fact contained relevant information. Moreover, Defendant Dixon confirmed during his deposition that he posted a meme about police use of force on his Facebook account, and his text messages may have contained similar information. (Cert. of Counsel (hereinafter, "Shapiro Cert.") [D.I. 118-2], Dec. 3, 2021, Ex. M, pp. 103:5-16, 104:2-7.)[4] There has been no showing that anyone reviewed all of the ESI prior to its deletion, and Defendant Dixon's self-serving determination of relevance has already been rejected by the Court. Accordingly, the Court rejects Defendant Dixon's contention that the deleted ESI did not need to be preserved for litigation purposes.

Having determined that the threshold requirement of spoliation is met, the Court next considers whether the ESI was lost because Defendant Dixon failed to take reasonable steps to preserve it. Here, as noted above, Defendant Dixon stipulates that

---

(Letter from Louis Charles Shapiro, Esq. [D.I. 118-1], Dec. 3, 2021, p. 3.)

[4] Notably, Defendant Dixon never asserted that he did not create social media posts or send text messages concerning police use of force.

he failed to preserve his text messages and that he "terminated" his Facebook account while litigation was pending. (Reynolds Letter at p. 3.) Therefore, the Court finds that the data was not destroyed by a "routine, good-faith operation of an electronic information system" or by other means of inadvertent deletion outside of Defendant Dixon's control. *See* FED. R. CIV. P. 37(e) advisory committee's note to 2006 amendment. Rather, the ESI was lost because Defendant Dixon intentionally failed to preserve it.

The next prong of the spoliation inquiry is whether the ESI can be restored or replaced through additional discovery. *See* FED. R. CIV. P. 37(e) advisory committee's note to 2015 amendment. With respect to Defendant Dixon's Facebook account, Dixon testified that he attempted to restore the account but is unable to do so at this time. (Shapiro Cert., Ex. M at pp. 79:24-83:9.) Accordingly, ESI in the form of Defendant Dixon's Facebook account has been spoliated as defined by Rule 37(e). With respect to Defendant Dixon's text messages, the Court previously directed Defendant Dixon to download his cloud data, but Defendant Dixon now admits that even after downloading his text messages he cannot recover any text messages that pre-date April 2020, and he stipulates that he failed to preserve his text messages. (Reynolds Letter at p. 3.) Accordingly, text messages prior to April 2020

are irretrievably lost and do not appear replaceable through additional discovery.[5]

The Court next proceeds to analysis of the appropriate sanctions to be awarded in light of Defendant Dixon's spoliation of ESI. If the Court finds that the party who committed spoliation acted with an intent to deprive another party of the information's use in the litigation, the Court may consider whether more severe sanctions, such as an adverse inference instruction or entry of default judgment, are warranted. *See* FED. R. CIV. P. 37(e)(2). If the Court does not find that ESI was lost with the intent to prevent its use in litigation, the Court may "order measures no greater than necessary to cure the prejudice[.]" *See* FED. R. CIV. P. 37(e)(1). Here, Defendant Dixon concedes that a sanction in the form of an adverse inference instruction may be given at trial.

In light of the foregoing, the Court concludes that Plaintiffs are entitled to an adverse inference instruction at trial. Defendant Dixon stipulates that he spoliated ESI during a

---

[5] While Plaintiffs produced an NJ.com article and an email from an NJ.com reporter as examples of what appear to be Dixon's Facebook posts (*see* Shapiro Cert., Ex. Q; Cert. of Louis Charles Shapiro, Esq. [D.I. 186-5], Apr. 14, 2023, Ex. S), Defendant Dixon admits that the Facebook account cannot be recovered and any posts that may have existed have been destroyed. Likewise, although some text messages may potentially be obtained from other participants to the text conversations, Plaintiffs cannot ascertain whether the totality of the lost information can be recovered from other sources.

time when such information should have been preserved. Moreover, Defendant Dixon had a duty to preserve ESI, he intentionally deleted the ESI, and the information cannot be restored or replaced. Furthermore, Defendant Dixon agrees to a sanction in the form of an instruction to the jury that it may "infer that Dixon deleted information that was adverse to his defenses in this litigation[.]" (Reynolds Letter at p. 3.) Plaintiffs' motions for sanctions are thus granted insofar as they request an adverse inference sanction. The specific language of the jury instruction shall be determined closer to trial should these matters proceed past dispositive motion practice.[6]

---

[6] Defendants Chief Jody Farabella, Officer Bryan Orndorf, and the City of Millville (hereinafter, the "Millville Defendants") filed in the *Capps* case a letter in response to Plaintiffs' motion for sanctions. (*See* Letter from A. Michael Barker, Esq. [D.I. 189], May 2, 2023.) In their letter, these defendants state that they "reserve the right to move to bar the admission of any such sanctions against them" and further challenge the relevance of Defendant Dixon's social media posts and other evidence of Defendant Dixon's general attitude towards police use of force. (*See id.* at pp. 2-3.) The Court ruled on May 12, 2022 that Defendant Dixon's text messages and Facebook posts are discoverable, as information concerning Defendant Dixon's "general attitude towards police use of force bears both on Dixon's credibility and his state of mind." (Transcript at pp. 23:18-24:14.) No party filed a motion for reconsideration or an appeal of this Court's May 12, 2022 decision. However, to the extent the Millville Defendants raise an admissibility objection at trial as to any adverse inference directed to the Millville Defendants, the Millville Defendants may file a motion *in limine* seeking a limiting instruction.

Plaintiffs also seek (1) to introduce evidence at trial relating to the circumstances surrounding Defendant Dixon's destruction of ESI, (2) an order requiring Defendant Dixon to produce his cell phone or data cloud equivalent for forensic inspection, and (3) an award of costs and attorney's fees. Defendant Dixon does not oppose or otherwise address any of these requested sanctions in his opposition brief. Instead, he argues that "the alternate requests by plaintiff to disqualify Dixon's counsel and hold additional discovery and hearings into the attorney-client communications, are unreasonable and inappropriate under the circumstances." (Reynolds Letter at p. 3.)

With respect to Plaintiffs' request for a forensic inspection of Defendant Dixon's cell phone or cloud data, the Court finds no basis to require a forensic inspection at this time. Defendant Dixon admits that he is unable to recover any text messages that pre-date April 2020 and has agreed to an adverse inference. Plaintiffs fail to provide any information from which the Court could conclude that a forensic examination of Defendant Dixon's cell phone would yield any deleted text messages or ESI. Consequently, the Court shall not order a forensic inspection of the cell phone or cloud data at this time.

As to Plaintiffs' request that they be permitted to introduce evidence concerning Defendant Dixon's deletion of ESI,

the Court will not at this time determine what evidence may be presented to the jury. This alternative sanction is available under Rule 37(e)(1) to cure prejudice. *See* FED. R. CIV. P. 37(e) advisory committee's note to 2015 amendment ("[A]llowing the parties to present evidence to the jury concerning the loss and likely relevance of information and instructing the jury that it may consider that evidence, along with all the other evidence in the case, in making its decision . . . would be available under subdivision (e)(1) if no greater than necessary to cure prejudice."). Plaintiff may reassert this request by way of *in limine* motion.

In considering Plaintiffs' request for attorney's fees and costs, the Court shall award Plaintiffs attorney's fees and costs in connection with filing these spoliation motions, as well as the prior spoliation motions. In *State National Insurance Co. v. County of Camden*, this Court previously stated:

> [W]hen a party . . . does not preserve emails of relevant custodians in breach of its duty, the adversary is forced to explore whether sanctions such as an adverse inference or more drastic sanctions — dismissal or suppression of evidence — are warranted. To perform such an investigation requires the non-breaching party to expend attorney time, and in some cases, expert fees to determine the extent and scope of the deletion or destruction. If, following such an investigation, there is no basis to award such spoliation sanctions . . . the non-breaching party still has suffered

> damages in the context of attorneys' fees and
> costs.

*State Nat'l Ins. Co. v. Cnty. of Camden*, No. 08-5128, 2011 WL
13257149, at *7 (D.N.J. June 30, 2011), *appeal denied by* 2012 WL
960431, at *2 (D.N.J. Mar. 21, 2012). This Court further noted in
*State National* that "'[s]poliation sanctions serve a remedial
function by leveling the playing field or restoring the prejudiced
party to the position it would have been without spoliation. They
also serve a punitive function, by punishing the spoliator for its
actions, and a deterrent function, by sending a clear message to
other potential litigants that this type of behavior will not be
tolerated and will be dealt with appropriately if need be.'" *Id.*
at *7 (quoting *Mosaid*, 348 F. Supp. 2d at 335).

    The Court concludes that monetary sanctions are
appropriate at this time given the history of the spoliation issue
in these cases. Had Defendant Dixon fulfilled his discovery
obligations and maintained potentially relevant ESI, the
spoliation motions would have been unnecessary. Moreover,
Defendant Dixon's conduct in this litigation required Plaintiffs
to take an ESI deposition and file two sanctions motions. In
opposition to the first sanctions motion, Defendant Dixon stated
that he "has not obstructed discovery, deleted or destroyed
evidence, or committed acts of evidence spoliation in this matter"

and further asserted that "[a]ny lost information, as described by Dixon, who is clearly not an information technology expert, cannot be reasonably ascribed to any intent to deprive plaintiffs Capps, Joyce, or Cottman, of any relevant and material evidence." (Letter from Thomas B. Reynolds, Esq. [D.I. 125], Jan. 3, 2022, pp. 3-4.) In a subsequent submission, Defendant Dixon stated that he "continues to maintain that there is no basis for a finding of spoliation, or for sanctions[.]" (Letter from Thomas B. Reynolds, Esq. [D.I. 168], July 18, 2022, p. 1.) Only after Plaintiffs filed a second motion for sanctions did Defendant Dixon stipulate to the destruction of text messages and his Facebook account and agree that an adverse inference instruction may be entered. Thus, the Court shall award attorney's fees and costs associated with the time incurred by Plaintiffs in filing both the instant motions for spoliation sanctions and the prior motions for sanctions. Plaintiffs may file an affidavit setting forth the reasonable fees and expenses incurred in connection with these motions.[7]

---

[7] The extent to which monetary sanctions should be apportioned between Defendant Dixon and his counsel shall be addressed in connection with the amount of attorney's fees and costs. *See Doe v. Willis*, No. 21-1576, 2023 WL 2918507, at *16 (M.D. Fla. Apr. 12, 2023)("The Court defers ruling on whether, and the extent to which, such monetary sanctions should be apportioned between Doe and her attorney(s) . . . . That issue has not been fully briefed at this point and is therefore not ripe for the Court's resolution.").

The Court next addresses Plaintiffs' motions to disqualify counsel for Defendant Dixon. During Defendant Dixon's ESI deposition, Defendant Dixon testified that he did not understand his preservation obligations until this Court issued an Order for his ESI deposition more than two years after the *Capps* complaint was filed, thereby implying that he was not advised of his duty to preserve ESI at the outset of litigation. Plaintiffs argue that counsel for Defendant Dixon must be disqualified pursuant to RPC 3.7 because defense counsel will be a necessary witness in the trial of this matter, as "testimony regarding whether or not [Defendant Dixon] was actually advised earlier [of his duty to preserve ESI] cannot be obtained from any other source aside from his current attorney in these cases." (Letter from Louis Charles Shapiro, Esq. [D.I. 187-1], Apr. 14, 2023, p. 6.) Plaintiffs also contend that disqualification of counsel for Defendant Dixon is warranted pursuant to RPC 1.7, because counsel's representation of Defendant Dixon is purportedly limited by counsel's own personal interest. (*Id.* at p. 8.) Plaintiffs assert that counsel could be sanctioned if he did not advise Defendant Dixon of his duty to preserve ESI, or alternatively, if counsel advised Defendant Dixon of his duty to preserve, then defense counsel has an obligation to disclose such information to the Court

21

and thereby reveal Defendant Dixon's allegedly perjurious deposition testimony. (*Id.* at pp. 8-9.)[8]

A "court's power to disqualify an attorney derives from its inherent authority to supervise the professional conduct of attorneys appearing before it." *United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980). "[T]he exercise of this authority is committed to the sound discretion of the [] court[.]" *Id.* "Generally, motions to disqualify are disfavored because of their potentially drastic consequences, and accordingly such motions are granted 'only 'when absolutely necessary.''" *Egersheim v. Gaud*,

---

[8] Neither party addresses whether Plaintiffs have standing to seek disqualification of counsel for Defendant Dixon. Courts in this District have differed as to whether a non-client has standing to bring a disqualification motion. *Compare Schiffli Embroidery Workers Pension Fund v. Ryan, Beck & Co.*, No. 91-5433, 1994 WL 62124, at *2 (D.N.J. Feb. 23, 1994)(rejecting a party's position "that only a client or former client affected by [an] actual or potential conflict may move for disqualification" and noting that court "has a duty to root out" unprofessional conduct) and *Essex Cnty. Jail Annex Inmates v. Treffinger*, 18 F. Supp. 2d 418, 431 (D.N.J. 1998)("[T]he plaintiffs' contention that the defendants are without standing to raise a potential conflict of interest between her and her clients must be rejected.") *with High 5 Games, LLC v. Marks*, No. 13-7161, 2018 WL 2278103, at *5 (D.N.J. May 18, 2018)("It is questionable whether Plaintiff has standing to raise a conflict entirely between Defendants and not involving Plaintiff or its counsel.") and *Shire Lab'ys Inc. v. Nostrum Pharms., Inc.*, No. 03-4436, 2006 WL 2129482, at *4 (D.N.J. July 26, 2006)("This Court recognizes that a party does not have standing to bring a Motion to Disqualify based on a material conflict of interest unless the party is either a former or current client."). Defendant Dixon has not objected to Plaintiffs' standing to bring these disqualification motions and the Court will consider the motions.

No. 07-5116, 2011 WL 13238543, at *4 (D.N.J. Mar. 30, 2011) (quoting *Rohm & Haas Co. v. Am. Cyanamid Co.*, 187 F. Supp. 2d 221, 226 (D.N.J. 2001)). "'Although doubts are to be resolved in favor of disqualification, the party seeking disqualification must carry a 'heavy burden' and must meet a 'high standard of proof' before a lawyer is disqualified.'" *Carlyle Towers Condominium Ass'n, Inc. v. Crossland Sav.*, 944 F. Supp. 341, 345 (D.N.J. 1996)(quoting. *Alexander v. Primerica Holdings, Inc.*, 822 F. Supp. 1099, 1114 (D.N.J. 1993)).

"Attorney disqualification is never automatic, even when a disciplinary rule prohibits an attorney's appearance in a case." *High 5 Games, LLC v. Marks*, No. 13-7161, 2018 WL 2278103, at *2 (D.N.J. May 18, 2018)(citing *Miller*, 624 F.2d at 1201). "'[T]he ethical rules should not be blindly applied without consideration of relative hardships.'" *Carlyle Towers*, 944 F. Supp. at 345 (quoting *Gould, Inc. v. Mitsui Min. & Smelting Co.*, 738 F. Supp. 1121, 1124 (N.D. Ohio 1990)). The Court must therefore consider the hardship to the non-moving party if its attorney is disqualified, the hardship to the moving party if the attorney is allowed to proceed in the case, and "'the court's obligation to maintain high professional standards and to ensure that the trial of the claims in the case will be free from taint.'" *Id.* (quoting

*Huntington v. Great W. Res., Inc.*, 655 F. Supp. 565, 567 (S.D.N.Y. 1987)).

The Court first addresses Plaintiffs' argument that counsel must be disqualified pursuant to New Jersey RPC 3.7(a).[9] RPC 3.7 states:

> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
>
>> (1) the testimony relates to an uncontested issue;
>>
>> (2) the testimony relates to the nature and value of legal services rendered in the case; or
>>
>> (3) disqualification of the lawyer would work substantial hardship on the client.

RPC 3.7(a). "[A]n attorney is a necessary witness where the information provided cannot be obtained through any other means, including through alternative witnesses." *Dantinne v. Brown*, No. 17-0486, 2017 WL 2766167, at *4 (D.N.J. June 23, 2017) (citing *United States v. Bos. Sci. Neuromodulation Corp.*, No. 11-1210, 2013 WL 2404816, at *7 (D.N.J. May 31, 2013)). By contrast, "an attorney is not considered necessary when his knowledge of the

---

[9] As set forth in Local Civil Rule 103.1, "[t]he Rules of Professional Conduct of the American Bar Association as revised by the New Jersey Supreme Court shall govern the conduct of the members of the bar admitted to practice in this Court[.]" L. CIV. R. 103.1(a).

relevant facts came from conversations with his clients and [the facts are] well within [the clients'] personal knowledge." *Bos. Sci. Neuromodulation Corp.*, 2013 WL 2404816 at *7. Furthermore, "[i]n order to disqualify an attorney the party seeking disqualification must do more than simply make a representation that a lawyer is a necessary witness." *Dantine*, 2017 WL 2766167, at *4 (citing *J.G. Ries & Sons, Inc. v. Spectraserv, Inc.*, 894 A.2d 681, 689 (N.J. Super. Ct. App. Div. 2006)). "The burden rests on the party seeking to disqualify to put forth enough evidence establishing the likelihood that the attorney will be a necessary witness at trial." *Boston Sci. Neuromodulation Corp.*, 2013 WL 2404816, at *6 (citing *Oswell v. Morgan Stanley Dean Witter & Co., Inc.,* No. 06-5814, 2007 WL 2446529, at *3 (D.N.J. Aug. 22, 2007)). Even if an attorney is a necessary trial witness, however, "Rule 3.7(a) does not prevent an attorney . . . from representing the client during pretrial proceedings." *Dantine*, 2017 WL 2766167, at *4 (citing *Bos. Sci. Neuromodulation Corp.,* 2013 WL 2404816, at *7). "The rule is only a prohibition against an attorney-witness acting as an 'advocate at trial[.]'" *Id.* (quoting *Main Events Prods., LLC v. Lacy*, 220 F. Supp. 2d 353, 355 (D.N.J. 2002)).

The Court rejects Plaintiffs' assertion that counsel for Defendant Dixon must be disqualified pursuant to RPC 3.7(a) at this time. A potential conflict issue initially arose in the

context of the spoliation sanctions motion in connection with the issue of whether Dixon acted with intent when deleting ESI. Defendant Dixon, however, has now agreed to an adverse inference instruction as a sanction. Therefore, defense counsel is not likely to be a witness in connection with the adverse inference issue. Additionally, even if Defendant Dixon's counsel would be a necessary witness at trial, counsel would not be disqualified pursuant to RPC 3.7(a) from participating in pretrial proceedings, and Plaintiffs' motion to disqualify is therefore, at best, premature. *See Pursell v. Spence-Brown*, No. 13-1571, 2013 WL 3338643, at *7 (D.N.J. July 2, 2013) (finding motion premature since "there has not yet been a determination that [the] attorney [] will be a 'necessary witness'").[10]

The Court next considers Plaintiffs' motion pursuant to New Jersey RPC 1.7. Specifically, RPC 1.7 provides:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict

---

[10] While conceding that RPC 3.7 implicates only counsel's role at trial and does not preclude counsel's participation in pretrial proceedings, Plaintiffs cite *Main Events Productions* for the proposition that the rule should also apply to a "pre-trial evidentiary hearing, such as the preliminary injunction hearing[.]" *Main Events Prods.,* 220 F. Supp. 2d at 357. (*See* Letter from Louis Charles Shapiro, Esq. [D.I. 187-1], Apr. 14, 2023, p. 7.) The Court, however, finds that an evidentiary hearing is unnecessary in light of Defendant Dixon's agreement to an adverse inference sanction.

> of interest. A concurrent conflict of interest
> exists if:
>
> (1) the representation of one client will be
> directly adverse to another client; or
>
> (2) there is a significant risk that the
> representation of one or more clients will be
> materially limited by the lawyer's
> responsibilities to another client, a former
> client, or a third person or by a personal
> interest of the lawyer.

RPC 1.7(a). RPC 1.7 "'arises out of a fundamental proposition that an attorney owes a duty of undivided loyalty to his or her client.'" *Gonnelli v. Town of Secaucus*, No. 05-5201, 2006 WL 8457510, at *4 (D.N.J. Aug. 29, 2006)(quoting *Manoir-Electroalloys Corp. v. Amalloy Corp.*, 711 F. Supp. 188, 192 (D.N.J. 1989)).

Plaintiffs argue that the personal interest of defense counsel will materially limit counsel's responsibilities to Defendant Dixon. Plaintiffs contend in this regard that if defense counsel had informed Defendant Dixon of his obligation to preserve ESI at the outset of litigation, then defense counsel must rectify Defendant Dixon's deposition testimony that Defendant Dixon was not advised of his preservation duty until just prior to his ESI deposition in September 2021, and defense counsel must advise the Court of the falsity of the testimony. Plaintiffs assert that by notifying the Court of such false testimony, however, Defendant Dixon's counsel would be subjecting his client to "serious"

consequences. (Letter from Louis Charles Shapiro, Esq. [D.I. 187-1], Apr. 14, 2023, p. 9.) Plaintiffs contend that this alleged conflict between counsel's duty of candor to the tribunal and counsel's duty of confidentiality to his client warrants defense counsel's disqualification. (*Id.* at pp. 9-10.)

Pursuant to RPC 3.3, "[a] lawyer shall not knowingly . . . offer evidence that the lawyer knows to be false. If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures[.]" RPC 3.3(a)(4). A lawyer's duty of candor applies "even if compliance requires disclosure of information otherwise protected by RPC 1.6." RPC 3.3(b). Moreover, pursuant to RPC 1.6(b)(2), a lawyer must reveal information relating to representation of a client "to the proper authorities, as soon as, and to the extent the lawyer reasonably believes necessary, to prevent the client or another person . . . from committing a criminal, illegal or fraudulent act that the lawyer reasonably believes is likely to perpetrate a fraud upon a tribunal." RPC 1.6(b)(2). When a client seeks to present perjured testimony,[11] "counsel should ask for a recess when it

---

[11] "Perjury is offering 'false testimony concerning a material matter with the willful intent to provide false testimony, rather than a result of confusion, mistake, or faulty memory.'" *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 648 (S.D. Tex. 2010)(quoting *United States v. Dunnigan*, 507 U.S. 87, 94 (1993)).

becomes clear that the [client's] testimony is at variance from prior statements" at which time "counsel can explain to the client the consequences of giving testimony which the attorney believes to be untrue." *Montanez v. Irizarry-Rodriguez*, 641 A.2d 1079, 1085 (N.J. Super. Ct. App. Div. 1994); *see also Nix v. Whiteside*, 475 U.S. 157, 169–70 (1986)("It is universally agreed that at a minimum the attorney's first duty when confronted with a proposal for perjurious testimony is to attempt to dissuade the client from the unlawful course of conduct. . . . [A]n attorney's revelation of his client's perjury to the court is a professionally responsible and acceptable response to the conduct of a client who has actually given perjured testimony."). "If the client persists in the view that the testimony about to be given is the correct version, counsel should make application to the court for permission to withdraw from representation pursuant to R.P.C. 1.16, assuming counsel's continued belief that the client's testimony is fraudulent." *Montanez*, 641 A.2d at 1085.

Defendant Dixon has stipulated that he destroyed ESI while represented by counsel and while these cases were pending and concedes that an adverse inference instruction can be entered. Because an adverse inference sanction is only available when ESI is intentionally destroyed to prevent its use in litigation, Defendant Dixon's deposition testimony that he did not understand

his preservation obligations is inconsistent with his subsequent stipulation. Nonetheless, Plaintiffs have not demonstrated that Defendant Dixon acted with a willful intent to provide false testimony at his ESI deposition, *see Rimkus Consulting Grp.,* 688 F. Supp. 2d at 648, and the Court therefore does not conclude at this time that a conflict between Defendant Dixon and the personal interest of his counsel warrants disqualification. The Court will, however, require Defendant Dixon's counsel to review Defendant Dixon's ESI testimony and determine what corrections are necessary in light of Defendant Dixon's subsequent stipulation concerning his deletion of ESI. Thereafter, Plaintiffs may renew their request for disqualification if appropriate.

Finally, even if a conflict of interest existed between Defendant Dixon and his counsel, Plaintiffs fail to address the relative hardships and demonstrate that disqualification is warranted under the circumstances. As set forth above, in deciding a motion to disqualify, the Court must also consider the hardship to the non-moving party if its attorney is disqualified, the hardship to the moving party if the attorney is allowed to proceed, and "'the court's obligation to maintain high professional standards and to ensure that the trial of the claims in the case will be free from taint.'" *Carlyle Towers*, 944 F. Supp. at 345 (quoting *Huntington,* 655 F. Supp. at 567). Because Plaintiffs do

not address these factors, they fail to meet their heavy burden of demonstrating that disqualification of counsel is appropriate at this time.

In summary, the Court finds that spoliation sanctions, including an adverse inference jury instruction and an award of attorney's fees and costs, are appropriate. To the extent Plaintiffs seek these sanctions in their pending motions, the motions are granted. Plaintiffs' request to present evidence concerning the circumstances surrounding the destruction of evidence is denied without prejudice, and Plaintiffs' request for a forensic inspection of Defendant Dixon's cell phone and cloud data is also denied without prejudice. In addition, Plaintiffs' motions to disqualify counsel are denied without prejudice.[12]

CONSEQUENTLY, for the reasons set forth above and for good cause shown:

IT IS on this **28th** day of **November 2023**,

---

[12] The Court notes that Exhibit S to Plaintiffs' counsel's April 14, 2023 certification was not filed on the docket, but a hard copy was submitted to Chambers. Plaintiffs did not file a corresponding motion to seal with their submissions. The Court previously advised the parties of their obligation to comply with Local Civil Rule 5.3 concerning the filing of materials under seal and the need to file a motion to seal in accordance with the court rules. (*See* Order [D.I. 151], Apr. 20, 2022.) Plaintiffs must comply with Local Civil Rule 5.3 when seeking to file materials with the Court under seal.

**ORDERED** that Plaintiffs' motions [D.I. 186 in Civil No. 19-12002, D.I. 170 in Civil No. 20-1118] for sanctions shall be, and are hereby, **GRANTED** in part and **DENIED** without prejudice in part; and it is further

**ORDERED** that Plaintiffs' motions for sanctions are granted to the extent Plaintiffs seek an adverse inference jury instruction and attorney's fees and costs incurred in filing the first and second motions for sanctions; and it is further

**ORDERED** that Plaintiffs' request to present evidence at trial concerning Defendant Dixon's destruction of ESI is denied without prejudice, subject to the issue being presented by way of *in limine* motion; and it is further

**ORDERED** that any other relief requested in Plaintiffs' motions for sanctions is denied without prejudice; and it is further

**ORDERED** that Plaintiffs' motions [D.I. 187 in Civil No. 19-12002, D.I. 171 in Civil No. 20-1118] to disqualify counsel for Defendant Dixon shall be, and are hereby, **DENIED WITHOUT PREJUDICE**; and it is further

**ORDERED** that counsel for Defendant Dixon shall file **within twenty (20) days** of the date of this Order corrections to Defendant Dixon's ESI deposition testimony; and it is further

**ORDERED** that Plaintiffs shall, **within twenty (20) days** of the date of this Order, file with the Court an affidavit of reasonable attorney's fees and costs incurred in connection with both motions for sanctions filed in these cases. Defendant Dixon may, **within ten (10) days** of the filing of such affidavit, submit a letter responding to Plaintiffs' affidavit of fees and costs and may address the appropriate allocation between Defendant Dixon and his counsel of any fee award that may be entered; and it is further

**ORDERED** that **within ten (10) days** of the date of this Order, Plaintiffs shall file on the docket any documents that were submitted only to Chambers in connection with the instant motions. If Plaintiffs seek to maintain such documents under seal, the documents may be filed under temporary seal along with a corresponding motion to seal pursuant to Local Civil Rule 5.3; and it is further

**ORDERED** that Defendant Dixon's counsel shall, **within ten (10) days** of the date of this Order, mail a copy of this Order to Defendant Dixon by certified mail and shall file on the docket an affidavit of service demonstrating such service.

s/ Ann Marie Donio
ANN MARIE DONIO
UNITED STATES MAGISTRATE JUDGE

cc: Hon. Renée Marie Bumb

33